THE STATE EX REL. RUSSELL, APPELLANT, *v.*
THORNTON, CHIEF OF POLICE, APPELLEE.

[Cite as *State ex rel. Russell v. Thornton,*
111 Ohio St.3d 409, 2006-Ohio-5858.]

(No. 2006–0526—Submitted August 8, 2006—Decided November 29, 2006.)

---

LUNDBERG STRATTON, J.

{¶ 1} This is an appeal from a judgment dismissing a public-records mandamus case because appellant, an inmate, failed to comply with R.C. 149.43(B)(4) by not obtaining a finding by his sentencing judge that the information sought was necessary to support a justiciable claim. For the reasons that follow, we affirm the judgment of the court of appeals.

{¶ 2} In 2003, appellant, Robert W. Russell, was convicted of rape, attempted rape, felonious sexual penetration, gross sexual imposition, and kidnapping, and was sentenced to an indefinite term of ten years to life in prison.

{¶ 3} In December 2004, Russell requested that the Wooster, Ohio Police Department provide him with copies of the following records: (1) any incident reports and statements made by Sarah Payden, Wendy Russell, and any others involved in an incident on February 12–14, 1995, (2) a full transcript of a taped recording made by an Officer Quicii of a telephone conversation between Sarah Payden and Robert Russell, (3) any statements made by Robert Hoffa and the employees of Friendly Ice Cream on the above dates relating to Sarah Payden, and (4) any and all records pursuant to an incident at Wooster High School in which Sarah Payden was involved in a fight with two other female students. Appellee, Wooster Chief of Police Stephen W. Thornton, denied Russell's request based on his belief that he was not required, under R.C. 149.43(B)(4), to provide the requested copies until Russell obtained an order from the court that sentenced him that his request was necessary to support a justiciable claim.

{¶ 4} In August 2005, Russell requested that Thornton provide him with copies of (1) any public records and incident and offense reports pertaining to Russell that were maintained in Thornton's files from January 1, 1995, until the present, (2) the record, incident, or offense report for a Robert W. Russell who had allegedly exposed himself in the early 1990s, and (3) offense and incident reports pertaining to Wendy Russell, Robert W. Russell, and Sarah Payden. In his request, Russell stated, "I'm seeking records of a criminal investigation or prosecution, only offense and incident reports and any narratives thereto." Although the request was not phrased in the way he wanted, it is clear that Russell intended to specify that he requested only offense and incident reports, and not records relating to a criminal investigation or prosecution. Thornton again denied Russell's request based on R.C. 149.43(B)(4).

{¶ 5} In September 2005, Russell responded to Thornton's second denial by stating that he was not seeking investigatory work product, but simply offense and incident reports, which he claimed were subject to immediate release. Russell then requested that Thornton provide him with copies of (1) any offense and incident reports related to an exposure incident by a Robert W. Russell in the early 1990s, (2) any offense and incident reports related to a fight at Wooster High School in February 1995 involving Sarah Payden, (3) any offense and

incident reports relating to Wendy Russell in February or March 1995, (4) any offense and incident reports relating to two Wooster High School students accused by Sarah Payden of sexual molestation, (5) any offense and incident reports prepared by the Wayne County Children's Services, (6) offense and incident reports made by Sarah Payden in February or March 1995 and the transcripts and audiotape of a telephone call between Sarah Payden and Russell in February 1995, and (7) any and all incident and offense reports made by Wendy Russell in August, September, and October 1997 relating to Russell.

{¶ 6} On September 21, 2005, the Wooster Law Director, on behalf of Thornton, again denied Russell's request, based on R.C. 149.43(B)(4), because Russell had "requested a copy of public records concerning a criminal investigation [or] prosecution." The director stated that the statute did not distinguish between offense or incident reports and investigatory work product, and Russell had not applied to the judge who imposed his sentence for the release of the records.

{¶ 7} On December 12, 2005, Russell filed a petition in the Court of Appeals for Wayne County for a writ of mandamus to compel Thornton to comply with the Ohio Public Records Act, R.C. 149.43, by providing him with copies of (1) any offense or incident reports pertaining to Robert W. Russell, D.O.B. 1–28–39, formerly of Miller Lake Road, Wooster, Ohio 44691, for 1993 through 1997, (2) any and all offense and incident reports from 1990–1993 that pertained to a Robert W. Russell, also of Wooster, Ohio, who was cited for indecent exposure, (3) any and all offense and incident reports arising out of incidents dated February 14, 1995, to May 1995 as they related to Robert W. Russell, his wife Wendy Russell, and his stepdaughter Sarah Payden, (4) any and all offense and incident reports relating to the false accusations against two Wooster High School male students who allegedly molested Sarah Payden in January or February 1995, (5) any and all offense and incident reports relating to a fight at Wooster High School in which Sarah Payden was beaten by two female students after accusing their boyfriends of sexual conduct, (6) any complaints or affidavits filed by Sarah Payden in 1995 pertaining to Russell, and (7) any audio, with a full certified transcription, relating to a telephone call between Sarah Payden and Russell around February 14, 1995. On December 20, 2005, Thornton filed a motion to dismiss Russell's petition for failure to state a claim upon which relief can be granted. Russell filed a memorandum in opposition.

{¶ 8} On February 15, 2006, the court of appeals granted Thornton's motion and dismissed Russell's petition.

{¶ 9} In his appeal as of right, Russell asserts that the court of appeals erred in dismissing his mandamus petition. A court can dismiss a mandamus action under Civ.R. 12(B)(6) for failure to state a claim upon which relief can be granted if, after all factual allegations of the complaint are presumed true and all

reasonable inferences are made in the relator's favor, it appears beyond doubt that he can prove no set of facts entitling him to the requested writ of mandamus. *State ex rel. Talwar v. State Med. Bd. of Ohio*, 104 Ohio St.3d 290, 2004-Ohio-6410, 819 N.E.2d 654, ¶ 5.

{¶ 10} The court of appeals based its Civ.R. 12(B)(6) dismissal on R.C. 149.43(B)(4) and held that Russell's public-records mandamus claim failed to state a claim because Russell did not allege that he had obtained his sentencing judge's finding that the information sought was necessary to support a justiciable claim. R.C. 149.43(B)(4); *State ex rel. Sevayega v. Reis* (2000), 88 Ohio St.3d 458, 459, 727 N.E.2d 910; *State ex rel. Rittner v. Barber*, Fulton App. No. F–05–020, 2006-Ohio-592, 2006 WL 307695, ¶ 14 ("although any member of the public may file a mandamus to compel, for example, a county clerk, to release public records, an inmate must first obtain a 'finding' from his or her sentencing judge that the documents are 'necessary to support a justiciable claim or defense' before making the request to the public official or office, who must then refuse, before the inmate may file a mandamus").

{¶ 11} Our paramount concern in construing a statutory provision is legislative intent. *State ex rel. Musial v. N. Olmsted*, 106 Ohio St.3d 459, 2005-Ohio-5521, 835 N.E.2d 1243, ¶ 23. Determining this intent requires us to read words and phrases in context and construe them in accordance with rules of grammar and common usage. *State ex rel. Canales–Flores v. Lucas Cty. Bd. of Elections*, 108 Ohio St.3d 129, 2005-Ohio-5642, 841 N.E.2d 757, ¶ 25.

{¶ 12} R.C. 149.43(B)(4) provides:

{¶ 13} "A public office or person responsible for public records is not required to permit a person who is incarcerated pursuant to a criminal conviction * * * to obtain a copy of *any public record concerning a criminal investigation or prosecution* * * *, unless the request to inspect or to obtain a copy of the record is for the purpose of acquiring information that is subject to release as a public record under this section and the judge who imposed the sentence or made the adjudication with respect to the person, or the judge's successor in office, finds that the information sought in the public record is necessary to support what appears to be a justiciable claim of the person." (Emphasis added.)

{¶ 14} The language of the statute is broad and encompassing. R.C. 149.43(B)(4) clearly sets forth heightened requirements for *inmates* seeking public records. The General Assembly's broad language clearly includes offense and incident reports as documents that are subject to the additional requirement to be met by inmates seeking records concerning a criminal investigation or prosecution. The General Assembly clearly evidenced a public-policy decision to restrict a convicted inmate's unlimited access to public records in order to conserve law enforcement resources.

{¶ 15} Russell cites various cases from this court to support his contention that offense and incident reports initiate criminal investigations but are not part of the investigation. See *State ex rel. Rasul–Bey v. Onunwor* (2002), 94 Ohio St.3d 119, 760 N.E.2d 421; *State ex rel. Cincinnati Enquirer, Div. of Gannett Satellite Info. Network, Inc. v. Joyce*, 97 Ohio St.3d 192, 2002-Ohio-5807, 777 N.E.2d 253, ¶ 18, quoting *State ex rel. Beacon Journal Publishing Co. v. Maurer* (2001), 91 Ohio St.3d 54, 741 N.E.2d 511. However, the cited cases did not involve an inmate but were public-records requests by a newspaper and a criminal defendant during the trial process. R.C. 149.43(B)(4), which sets out the requirements for an inmate to obtain public records, clearly was drafted to restrict the ability of inmates to obtain what would otherwise be easily obtainable by noninmates. We hold that this court's prior interpretations regarding incident reports and offense reports in the cases cited by Russell do not apply to cases involving inmates once they have been convicted.

{¶ 16} Because Russell failed to obtain a finding from the sentencing judge that "the information sought in the public record is necessary to support what appears to be a justiciable claim," he has failed to satisfy the statutory requirement for access to these records. R.C. 149.43(B)(4).

{¶ 17} Russell did not provide Chief Thornton with any evidence to indicate that he made an effort to comply with this statutory requirement. In the absence of that evidence, Russell failed to demonstrate that he had a clear legal right to the remedy he sought in his petition, and Chief Thornton was under no clear legal duty to release the requested records.

{¶ 18} Accordingly, we affirm the judgment of the court of appeals dismissing the petition for a writ of mandamus.

Judgment affirmed.

RESNICK, O'CONNOR, O'DONNELL and LANZINGER, JJ., concur.

MOYER, C.J., and PFEIFER, J., dissent.

---

**PFEIFER, J., dissenting.**

{¶ 19} I agree with the majority opinion's conclusion that R.C. 149.43(B)(4) sets forth heightened requirements when inmates seek public records. I disagree with the majority opinion's conclusion that R.C. 149.43(B)(4) applies to this case because this case does not involve a request for records "concerning a criminal investigation or prosecution."

{¶ 20} R.C. 149.43(B)(4) provides that the public office or custodian of the records is not obligated to permit an incarcerated convict "to obtain a copy of any public record concerning a criminal investigation or prosecution" unless the

requested record "is subject to release as a public record" and the sentencing judge "finds that the information sought in the public record is necessary to support what appears to be a justiciable claim of the person." According to its plain language, the heightened requirements of R.C. 149.43(B)(4) are manifestly inapplicable when the inmate requests a copy of a public record that does not concern "a criminal investigation or prosecution." See R.C. 1.42; *In re A.B.,* 110 Ohio St.3d 230, 2006-Ohio-4359, 852 N.E.2d 1187, ¶ 33 ("it is our duty to give meaning and effect to the plain language of the statute as set forth by the General Assembly").

{¶ 21} Russell primarily requested certain offense and incident reports. In *State ex rel. Rasul–Bey v. Onunwor* (2002), 94 Ohio St.3d 119, 120, 760 N.E.2d 421, we stated, "Offense and incident reports initiate criminal investigations but are not part of the investigation." See *State ex rel. Beacon Journal Publishing Co. v. Maurer* (2001), 91 Ohio St.3d 54, 56, 741 N.E.2d 511 ("incident reports initiate criminal investigations but are not part of the investigation"). Based on this precedent, it is readily apparent that offense and incident reports are not part of either the investigation or the prosecution. Thornton does not even contend that the requested offense and incident reports concern any criminal investigation or prosecution.

{¶ 22} Insofar as Russell's mandamus claim relates only to offense and incident reports, he is not requesting records "concerning a criminal investigation or prosecution," and R.C. 149.43(B)(4) does not prevent him from obtaining these records. Based on the foregoing, the court of appeals erred in dismissing Russell's mandamus petition for failure to state a claim upon which relief can be granted based on R.C. 149.43(B)(4). I would reverse the judgment of the court of appeals and remand the cause for further proceedings. Because the majority does not do so, I dissent.

MOYER, C.J., concurs in the foregoing dissenting opinion.

————————

Robert W. Russell, pro se.

Richard R. Benson Jr., Wooster Director of Law, for appellee.

Frank C. Brown Jr., pro se, urging reversal as amicus curiae.