**WHEELER, Appellant,**

v.

**McBRIDE,[1] Appellee.**

[Cite as *Wheeler v. McBride,* 178 Ohio App.3d 367, 2008-Ohio-5109.]

Court of Appeals of Ohio,
Fourth District, Pickaway County.

No. 08CA4.

Decided Sept. 29, 2008.

---

1. Esther M. McBride is the sole appellee. Lawrence R. McBride, now deceased, was a party in the trial court. However, Esther now owns all of Lawrence's prior interest in the real estate in question.

Gary D. Kenworthy, for appellant.

Kagay, Albert, Diehl & Groeber, and Jeffrey D. Swick, for appellee.

---

KLINE, Judge.

{¶ 1} Carl Wheeler appeals the judgment of the Pickaway County Common Pleas Court, which granted Esther McBride's motion for summary judgment regarding an easement dispute. On appeal, Carl contends that the trial court erred because a genuine issue exists regarding whether an easement was implicitly created when the original grantor divided the real estate into separate parcels. Because we find that the trial court applied the wrong legal standard to the facts, we agree. Accordingly, we reverse the judgment of the trial court and remand this cause to the trial court for further proceedings consistent with this opinion.

I

{¶ 2} Under our standard of review (see below), we construe the facts in favor of Carl.

{¶ 3} K.T.J. Corporation owned one parcel of real estate on the east side of U.S. Route 23, which totaled 108.647 acres. Eventually, it divided the one parcel into four parcels consisting of 5.01, 4.99, 0.36, and 98.28 acres. The 5.01 acre parcel is in the northwestern part of the original parcel. The 4.99 acre parcel is located in the northeastern part of the original tract except for a small strip that runs west toward U.S. Route 23. The small strip is to the north of the 5.01 acre parcel. Most of the 98.28 acre parcel is directly south of the 5.01 and 4.99 acre parcels, with a small strip to the west of the 5.01 parcel. The 0.36 acre plot is separated from the 5.01 and 4.99 acre parcels by the 98.28 acre parcel. It is in the extreme southwestern corner of the original plot and is close to U.S. Route 23. However, it does not have an access right-of-way to U.S. Route 23, because at the same time K.T.J. deeded the 98.28 acre parcel to the McBrides, it also deeded to the state of Ohio a small strip of land between the original 108.647 acre parcel and U.S. Route 23.

{¶ 4} K.T.J. created the 98.28 acre parcel in 1977 when K.T.J. conveyed it to Lawrence R. and Esther M. McBride. However, the deed shows that K.T.J. intended to reserve at least two easements and possibly three.

{¶ 5} First, the deed shows that K.T.J. reserved a sewer easement, which was ten feet on either side of a centerline.

{¶ 6} Second, the deed defines a 60–foot by 100–foot easement. At oral argument, the parties disputed exactly where this easement is located. Carl argued that it is the strip of the 98.28 acre parcel that is directly west of the 5.01 parcel. Esther asserted that it was located farther to the north.

{¶ 7} Third, at the end of the deed, K.T.J. referred to a 60–foot strip of land as a "right of way as it now exists." K.T.J. referred to this 60–foot strip of land as a nonexclusive easement, stating, "Said easement and Right–of–Way shall be for the use and benefit of the owners, including the Grantees, their heirs, successors, and assigns, of the real estate heretofore owned by the Grantor at this location and consisting of approximately 108.647 acres (exclusive of road Right–of–Way) more or less, including their invitees, agents, contractors, customers, and others lawfully using said easement for such purposes. Said easement shall not be blocked and shall, at all times permit passage over said easement and right-of-way of pedestrians, automobiles, trucks, tractors, and other vehicles. Grantor, its successors and assigns, will maintain the surface of said easement and right-of-way as it now exists. If Grantees wish further improvement of said easement and right-of-way by improving the same with blacktop or other type of roadway surface, the Grantees shall accomplish the same at their expense. The Grantor, for itself, its successors and assigns, agrees to dedicate said sixty (60) foot easement and right-of-way to any appropriate public authority for street and roadway purposes * * *."

{¶ 8} Carl seeks to use this 60–foot wide strip on the west side of Esther's property for ingress and egress to the 0.36 acre parcel that he now owns. Despite this 1977 deed reference to the 60–foot right of way, none of the other deeds in the record expressly create or reserve such an easement in favor of K.T.J. or the successor owners of the 0.36 acre lot, now Carl. In fact, only the 1977 deed to the McBrides references this easement.

{¶ 9} In 1978, K.T.J. conveyed its remaining interest in the 5.01, 4.99, and 0.36 acre parcels by quit claim deed. This deed refers to the sewer easement only. These same three parcels were conveyed again in 1980, this time without any reference to the sewer easement. The sewer easement does not reappear on the deed to the 0.36 acre parcel again until 1984. Although it is not clear from the record, it appears that the deed for the 0.36 acre property was frequently transferred between the same individuals and their various corporations until Carl purchased the 0.36 acre property in 1994 by general warranty deed.

{¶ 10} Although the first conveyance of the 5.01 acre parcel referred to only the sewer easement, the 2004 conveyance to its present owner spelled out in detail the 60–foot easement now at issue and granted the purchaser a nonexclusive right to use that easement. Likewise, the 1994 deed of the 4.99 acre parcel details the metes and bounds of the easement used for ingress and egress. So, sometime after the original grant by K.T.J. and the grant to the present owners, the easement at issue became part of the chain of title. (The record on appeal does not contain a complete chain of title for those properties.) However, no such description of that 60–foot easement appears in any the deeds to the 0.36 acre parcel now owned by Carl.

{¶ 11} Carl purchased the 0.36 acre with the belief that he was entitled to use the 60–foot easement to reach his property. As we stated earlier, although the property is close to U.S. Route 23, there is no direct access to it from the highway because of a small strip of land owned by the State of Ohio. For most of the time Carl has owned the property, he has trespassed across the property to the south to get to his land because the 60–foot easement contains crops during the growing season.

{¶ 12} Carl filed a complaint seeking, among other things, a judgment declaring his right to use the easement for ingress and egress. He alleged that he is entitled to such an easement under any of three legal theories: (1) easement by necessity; (2) easement by estoppel; and (3) reformation of the deed. After Esther answered, the parties jointly stipulated to and filed exhibits, which were 13 deeds relevant to this action. On the same day the exhibits were filed, Esther moved for summary judgment.

{¶ 13} In her motion, Esther argued that implying an easement by necessity requires that such an easement be "strictly necessary." She argued that Carl could either attempt to get direct access from U.S. Route 23 or that he should negotiate for an easement with the property owners to the south. Carl responded, arguing that an easement must only be "reasonably necessary to the beneficial enjoyment" of his land. He further claimed that he could not obtain direct access to U.S. Route 23 from his property and that he could not negotiate with owners to the south because many of them lived out of state. In Esther's reply brief, she again asserted that such an easement must be "strictly necessary."

{¶ 14} The trial court granted summary judgment in favor of Esther. In addressing Carl's argument that he is entitled to an easement by necessity, the trial court found that the possibility of an alternate route to the south diminished Carl's claim that an easement across Esther's property was strictly necessary. Consequently, the trial court determined that Carl was not entitled to an easement across Esther's property.

{¶ 15} Carl now appeals and asserts the following assignment of error: I. "The trial court erred in granting [Esther] a summary judgment on [Carl's] claim for an easement by necessity over [Esther's] property."

## II

{¶ 16} Carl contends in his sole assignment of error that the trial court erred when it granted Esther's motion for summary judgment. We agree. Our review is de novo. See, e.g., *Comer v. Risko,* 106 Ohio St.3d 185, 2005-Ohio-4559, 833 N.E.2d 712, ¶ 8.

{¶ 17} Summary judgment is appropriate only when it has been established (1) that there is no genuine issue as to any material fact; (2) that the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to only one conclusion, and that conclusion is adverse to the nonmoving party. Civ.R. 56(A). See *Bostic v. Connor* (1988), 37 Ohio St.3d 144, 146, 524 N.E.2d 881; *Morehead v. Conley* (1991), 75 Ohio App.3d 409, 411, 599 N.E.2d 786. In ruling on a motion for summary judgment, the court must construe the record and all inferences therefrom in the opposing party's favor. *Doe v. First United Methodist Church* (1994), 68 Ohio St.3d 531, 535, 629 N.E.2d 402.

{¶ 18} The burden of showing that no genuine issue of material fact exists falls upon the party who moves for summary judgment. *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 294, 662 N.E.2d 264, citing *Mitseff v. Wheeler* (1988), 38 Ohio St.3d 112, 115, 526 N.E.2d 798. However, once the movant supports his or her motion with appropriate evidentiary materials, the nonmoving party "may not rest upon mere allegations or denials of his pleadings, but his response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Civ.R. 56(E). See also *Wing v. Anchor Media, Ltd. of Texas* (1991), 59 Ohio St.3d 108, 111, 570 N.E.2d 1095; *Dresher* at 294–295, 662 N.E.2d 264.

{¶ 19} In reviewing whether an entry of summary judgment is appropriate, an appellate court must independently review the record and the inferences that can be drawn from it to determine whether the opposing party can possibly prevail. *Morehead,* 75 Ohio App.3d at 411–412, 599 N.E.2d 786. "Accordingly, we afford no deference to the trial court's decision in answering that legal question." Id. at 412, 599 N.E.2d 786. See also *Schwartz v. Bank–One, Portsmouth, N.A.* (1992), 84 Ohio App.3d 806, 809, 619 N.E.2d 10.

{¶ 20} Carl contends that there are genuine issues regarding whether he is entitled to an implied easement by necessity.

{¶ 21} "An implied easement is based upon the theory that whenever one conveys property he includes in the conveyance whatever is necessary for its

beneficial use and enjoyment and retains whatever is necessary for the use and enjoyment of the land retained." *Trattar v. Rausch* (1950), 154 Ohio St. 286, 43 O.O. 186, 95 N.E.2d 685, paragraph four of the syllabus. "Implied easements are not favored because they are in derogation of the rule that written instruments speak for themselves." Id. at paragraph three of the syllabus. As a result, an implied easement will be found only if the following four elements are met: "(1) A severance of the unity of ownership in an estate; (2) that, before the separation takes place, the use which gives rise to the easement shall have been so long continued and obvious or manifest as to show that it was meant to be permanent; (3) that the easement shall be reasonably necessary to the beneficial enjoyment of the land granted or retained; (4) that the servitude shall be continuous as distinguished from a temporary or occasional use only." *Ciski v. Wentworth* (1930), 122 Ohio St. 487, 172 N.E. 276, syllabus.

{¶ 22} It has long been the rule that the person seeking to establish an easement by implication must demonstrate, among other things, that the easement is "reasonably necessary." *Ciski*, 122 Ohio St. 487, 172 N.E. 276; *Trattar*, 154 Ohio St. 286, 43 O.O. 186, 95 N.E.2d 685. Despite these cases, Esther argues that Carl must demonstrate that an easement is "strictly necessary" before the court can find an easement by implication. In support of this argument, Esther cites *Tiller v. Hinton* (1985), 19 Ohio St.3d 66, 19 OBR 63, 482 N.E.2d 946. In *Tiller*, the court stated that "to justify the implication of an easement by necessity, strict necessity is required." Id. at 69, 19 OBR 63, 482 N.E.2d 946.

{¶ 23} First, we observe that *Tiller* is a plurality opinion, making only the syllabus binding on this court. See *Hedrick v. Motorists Mut. Ins. Co.* (1986), 22 Ohio St.3d 42, 44, 22 OBR 63, 488 N.E.2d 840, overruled on other grounds.

{¶ 24} Second, a person seeking to establish an easement by implication has two avenues by which to do so: (1) by strict necessity or (2) by prior use. *Trattar*, 154 Ohio St. at 293, 43 O.O. 186, 95 N.E.2d 685. See also *Metro. Home Invest. Corp. v. Ivy Hill Condominium Assn.* (Dec. 4, 1998), Trumbull App. Nos. 97-T-0030 and 97-T-0143, 1998 WL 964591. The correct legal standard varies between these two doctrines.

{¶ 25} In *Metro. Home*, the appellate court reversed the trial court's decision because it had required that the appellant establish that an easement was "strictly necessary" for ingress and egress. Id. In that case, the original owner of the land had developed part of the land and had built a parking lot and roadway across portions of the undeveloped land for use of the dwellers of the condominiums. Id. Later, the undeveloped land was conveyed to others, but an easement for the roadway and parking lot was never properly recorded. Id.

Because the new owner of the land sought to redevelop the roadway and parking lot, it sued to eject the occupants and to keep them from trespassing. Id.

{¶ 26} In reversing the trial court, *Metro. Home* carefully distinguished between the two legal standards employed in *Trattar*. In the first type of easement, the four elements from *Ciski* are used, which require only that the easement be "reasonably necessary." Id. Regarding the second type, a showing of "strict necessity" is required. Id. Because the original developer had created the parking lot and roadway, *Metro. Home* determined that the trial court should have required that the easement be "reasonably necessary."

{¶ 27} Here, the trial court used the "strict necessity" test. We respectfully find that it used the wrong standard. Construing the facts in Carl's favor, K.T.J. originally operated a water-treatment facility on his lands, i.e., the 0.36 acre plot. As long as the facility was in operation, it is reasonable to infer that various persons accessed it. The 1977 deed to the McBrides appears to presume the existence of a 60–foot easement used for ingress and egress, i.e., a "right of way as it now exists." But the various deeds, the plat map, and a photo demonstrate that all parcels but Carl's have direct access to U.S. Route 23 through a shared access point, which is at the end of the easement referred to in the McBrides' 1977 deed.

{¶ 28} Based on this evidence, the only reasonable inference is that K.T.J., after it deeded a small strip of land to the state of Ohio, accessed its facility and property (located on the 0.36 parcel) by way of the 60–foot easement referred to in the McBrides' deed. There was (and still is) no other access point to U.S. Route 23, and therefore, it is unreasonable to believe that K.T.J. would have trespassed (as Carl now must) when it had a perfectly accessible way to reach its facility. Guided by this evidence of prior use by the grantor, the trial court should have applied the four elements discussed earlier, including inquiring into whether "the easement shall be reasonably necessary to the beneficial enjoyment of the land." *Ciski*, 122 Ohio St. 487, 172 N.E. 276. See also *Metro. Home*, Trumbull App. Nos. 97–T–0030 and 97–T–0143, 1998 WL 964591.

{¶ 29} Accordingly, we sustain Carl's sole assignment of error and reverse the judgment of the trial court. We remand this cause to the trial court for further proceedings consistent with this opinion.

Judgment reversed
and cause remanded.

ABELE, P.J., and MCFARLAND, J., concur.