FITZPATRICK, Appellee,

v.

PALMER, Appellant.

[Cite as *Fitzpatrick v. Palmer*, 186 Ohio App.3d 80, 2009-Ohio-6008.]

Court of Appeals of Ohio,
Fourth District, Lawrence County.

No. 09CA7.

Decided Nov. 5, 2009.

82

Anderson & Anderson Co., L.P.A., and W. Mack Anderson, for appellee.

David B. Beck, for appellant.

HARSHA, Judge.

{¶ 1} George Palmer appeals the trial court's judgment declaring that Paul David Fitzpatrick II had established a public easement by prescription and an easement by necessity over Palmer's property. Palmer contends that the trial court's judgment is against the manifest weight of the evidence. We agree that Fitzpatrick failed to prove by clear and convincing evidence that the public had acquired an easement by prescription or that Fitzpatrick had acquired an easement by necessity. And because the trial court converted Fitzpatrick's claim for a private easement by prescription into one for a public easement, it did not rule upon the existence of a private easement. Accordingly, we remand this matter to the trial court to address that issue.

{¶ 2} Palmer next asserts that the trial court improperly relied upon parol evidence when interpreting the Lawrence County commissioners' decision vacating a road. Because the resolution is unambiguous, we agree that there was no need to rely on extrinsic evidence in construing it.

{¶ 3} Palmer also argues that the trial court erred by overruling his objections to the magistrate's decision. Our resolution of the foregoing arguments renders this argument moot, and we need not address it.

{¶ 4} Accordingly, we sustain Palmer's first four assignments of error to the extent that they challenge the trial court's decision (1) finding a public easement by prescription and an easement by necessity and (2) interpreting the commissioners' resolution. We overrule his fifth assignment of error as moot. We reverse the trial court's judgment and remand the cause.

## I. FACTS

{¶ 5} Fitzpatrick and Palmer own adjacent property in a rural area of Lawrence County. Township Road 161 leads to Palmer's property. Fitzpatrick maintains that he uses part of Township Road 161 and a right of way over Palmer's property to access a one-acre tract of Fitzpatrick's land, which sits at the top of a hill. Fitzpatrick does not live on this one-acre tract, and there is no residential structure on the property. The only structure on the one-acre tract is

the remnants of an old house foundation. When Palmer purchased his property, he denied Fitzpatrick access to the alleged right of way.

{¶ 6} Palmer later filed a petition to vacate the part of Township Road 161 that his property borders. The Lawrence County commissioners approved Palmer's petition by a resolution that states: "To vacate a portion of Township Road 161 (portion of road bordered on both sides by the property of George Palmer * * *). * * * Survey to be recorded by Nate Dickerson upon completion."

{¶ 7} Fitzpatrick subsequently filed a complaint against Palmer in which he alleged that he had obtained an easement by prescription over Palmer's property.

{¶ 8} At trial, the testimony was often vague and did not translate well to the written record.[1] Even counsel and the magistrate, at times, wondered aloud how the parties' lack of any descriptive terminology would translate to the record. At one point, the magistrate expressed impatience with the parties' inability to provide any clear explanation of the property they referred to in the testimony and even proclaimed "it's not making any sense to me." Nonetheless, we have done our best to discern the facts from the record.

{¶ 9} Lawrence County Engineer Surveyor Nate Dickerson performed a survey of Palmer's property around 2003. At that time, he observed an "earthen lane" that led to Fitzpatrick's property. When he next visited the property in 2004 or 2005, he could no longer detect this earthen lane. Dickerson explained that he was involved in Palmer's request to vacate Township Road 161. He stated that he believed that the road would be vacated from the cable gate by Palmer's house onward in a northerly direction; he did not believe that the vacation would block Fitzpatrick's access to the earthen lane. Dickerson explained that the county commissioners requested him to prepare a map to show what property was vacated, but he never completed it. Dickerson stated that Fitzpatrick had another access road to reach his property but it crossed "real steep" terrain and it would be expensive to build a road across this terrain. Dickerson stated that the easiest way to reach Fitzpatrick's property was by using the earthen lane.

{¶ 10} Don Fitzpatrick (Fitzpatrick's uncle) testified that in 1995, he conveyed the property to Fitzpatrick. He stated that the only way to reach the property was by crossing the disputed right of way over Palmer's property and that this was how he reached the property during the five years that he owned it.

{¶ 11} Samuel Holback Jr. testified that in the mid–1970s, he used to hunt on the property Fitzpatrick now owns and used the disputed right of way to reach it.

---

1. The transcript is replete with vague descriptions such as "This being his house" and "There's a cable right there." Obviously, the parties were referring to a map, but they failed to make a clear record.

The last time he used the road was ten to 11 years ago. He stated that he never drove a car on it but just walked it.

{¶ 12} Lance Dale Broughton stated that he used the disputed right of way in 1967.

{¶ 13} Richard Winters stated that he has walked the disputed right of way probably about a dozen times, but he has not used it since the 1960s or 1970s.

{¶ 14} Paul David Fitzpatrick (Fitzpatrick's father) stated that he used the disputed right of way on a monthly basis over the course of 40 years. He stated that there was no other road to reach the property. Fitzpatrick acknowledged that there is a logging road on the other side of the property but it is "straight down." He indicated he has used the disputed right of way for approximately 30 years. He used to ride horses on it and has driven a car down the right of way.

{¶ 15} To rebut Fitzpatrick's evidence, Palmer presented testimony from Clyde Conley. Conley testified that the disputed right of way is not a real road that cars could use. He stated, "You couldn't run a goat through it." He stated that he never saw cars use it. Teddy Franklin Conley also stated that he has never seen cars on the disputed right of way. Palmer stated that it is not a road but a path. He has not seen any vehicles on the right of way since he has owned the property.

{¶ 16} The magistrate determined that Fitzpatrick had established a public easement by prescription and an easement by necessity over Palmer's property, even though Fitzpatrick had not pleaded either one. The magistrate found that (1) a 12–foot–wide dirt roadway sits across Palmer's land that stretches from Township Road 161 to Fitzpatrick's property, (2) the dirt road has been used for over 50 years as the only access to Fitzpatrick's property, (3) Fitzpatrick, his predecessor in title, and other members of the public have used the roadway continuously, openly, notoriously, and adversely from the 1950s to 2000, when Palmer stopped them, (4) Palmer requested the county commissioners to vacate the part of Township Road 161 that ran through his property, (5) Fitzpatrick objected to Palmer's request to vacate, asserting that it would prevent him from having access to the dirt roadway that went to his property, (6) Dickerson surveyed the property and stated that "it was the intent to vacate only that portion of Township Road 161 north of said dirt roadway," (7) Fitzpatrick's "property has been accessed only by said roadway and it would be prohibitive to gain access to said property from any other means due to the steep terrain of the land," and (8) unless Fitzpatrick is allowed to use the dirt road, he will be unable to access his property. The magistrate thus concluded that "there has been established a public easement by prescription and an easement by necessity." The magistrate further determined that the commissioners did not vacate the portion of Township Road 161 until after it provided access to the right of way.

{¶ 17} After Palmer objected to several of the magistrate's findings of fact and conclusions of law, Fitzpatrick filed a motion to amend the pleadings to conform to the evidence. Again, Palmer objected.

{¶ 18} In overruling Palmer's objections, the trial court found that a public easement by prescription and an easement by necessity exist over Palmer's property. The court also adopted the finding that the county commissioners had not vacated the portion of Township Road 161 that leads to the disputed right of way.

## II. ASSIGNMENTS OF ERROR

{¶ 19} Palmer raises five assignments of error:

First Assignment of Error:

The trial court erred as a matter of law in finding the easement was a public easement and by granting Plaintiff's motion to amend the pleadings.

Second Assignment of Error:

The trial court erred as a matter of law in finding Plaintiff established an easement by prescription.

Third Assignment of Error:

The trial court erred as a matter of law in finding an easement by necessity.

Fourth Assignment of Error:

The trial court erred as a matter of law by finding Township Road 161 was not vacated by the Lawrence County Commissioners.

Fifth Assignment of Error:

The trial court erred as a matter of law by overruling Appellant/Defendant's objections.

## III. EASEMENTS

{¶ 20} Palmer's first three assignments of error challenge the trial court's finding that Fitzpatrick demonstrated that he had obtained a public or private easement by prescription and an easement by necessity over the disputed piece of land. He essentially argues that the trial court's decision on these issues is against the manifest weight of the evidence. Because the same standard of review governs these three assignments of error, we consider them together.

## A. STANDARD OF REVIEW

{¶ 21} We will not reverse a trial court's judgment as being against the manifest weight of the evidence as long as some competent, credible evidence supports it. See, e.g., *Sec. Pacific Natl. Bank v. Roulette* (1986), 24 Ohio St.3d

17, 20, 24 OBR 14, 492 N.E.2d 438; *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 280, 8 O.O.3d 261, 376 N.E.2d 578. Under this standard of review, a reviewing court does not decide whether it would have come to the same conclusion as the trial court. Rather, we are required to uphold the judgment so long as the record, as a whole, contains some evidence from which the trier of fact could have reached its ultimate factual conclusions. See, e.g., *Bugg v. Fancher*, Highland App. No. 06CA12, 2007-Ohio-2019, 2007 WL 1225734, at ¶ 9. See *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 80, 10 OBR 408, 461 N.E.2d 1273.

## B. EASEMENTS IN GENERAL

{¶ 22} An easement is an interest in the land of another that entitles the owner of the easement to a limited use of the land in which the interest exists. *Parrett v. Penn Cent. Corp.* (July 27, 1987), Pickaway App. No. 86CA17, 1987 WL 14754, citing *Szaraz v. Consol. RR. Corp.* (1983), 10 Ohio App.3d 89, 10 OBR 112, 460 N.E.2d 1133. An easement may be created by specific grant, prescription, or implication that may arise from the particular set of facts and circumstances. *Campbell v. Great Miami Aerie No. 2309, Fraternal Order of Eagles* (1984), 15 Ohio St.3d 79, 80, 15 OBR 182, 472 N.E.2d 711, citing *Yeager v. Tuning* (1908), 79 Ohio St. 121, 86 N.E. 657; *Ciski v. Wentworth* (1930), 122 Ohio St. 487, 172 N.E. 276; and *Trattar v. Rausch* (1950), 154 Ohio St. 286, 43 O.O. 186, 95 N.E.2d 685.

{¶ 23} The plaintiff bears the burden of proving an easement by clear and convincing evidence. See *Cadwallader v. Scovanner*, 178 Ohio App.3d 26, 2008-Ohio-4166, 896 N.E.2d 748, at ¶ 55; *Vance v. Roa* (Sept. 7, 2000), Lawrence App. No. 99CA23, 2000 WL 1283075. "Clear and convincing evidence" is evidence that will produce in the factfinder's mind a firm belief or conviction as to the facts sought to be established. *State v. Eppinger* (2001), 91 Ohio St.3d 158, 164, 743 N.E.2d 881; *State v. Schiebel* (1990), 55 Ohio St.3d 71, 74, 564 N.E.2d 54. It is considered a higher degree of proof than a mere preponderance of the evidence, the standard generally used in civil cases, but it is less stringent than the "beyond a reasonable doubt" standard used in criminal trials. The standard of review for weight-of-the-evidence issues, even where the burden of proof is clear and convincing evidence, retains its focus upon the existence of "some competent, credible evidence." Id. at 74, 564 N.E.2d 54.

## C. EASEMENT BY PRESCRIPTION

{¶ 24} In his first and second assignments of error, Palmer asserts that Fitzpatrick failed to clearly and convincingly show either a public or private prescriptive easement.

{¶ 25} Prescriptive easements are not favored in law, because they deprive the legal property owner of rights without compensation. *Cadwallader*, 178 Ohio App.3d 26, 2008-Ohio-4166, 896 N.E.2d 748, at ¶ 55. "Society generally prefers that traditional recordable conveyances control the status of titles for real property interests. Some courts base prescriptive easements on a fiction that long usage evidences a written conveyance that was later lost." *J.F. Gioia, Inc. v. Cardinal Am. Corp.* (1985), 23 Ohio App.3d 33, 37, 23 OBR 76, 491 N.E.2d 325; see also *Nusekabel v. Cincinnati Pub. School Emps. Credit Union, Inc.* (1997), 125 Ohio App.3d 427, 435–436, 708 N.E.2d 1015 (noting that one commentator has stated that prescriptive easements and adverse possession are "relics of the past" that reward the "theft of land").

{¶ 26} Thus, "[o]ne who claims an easement by prescription has the burden of proving by clear and convincing evidence all the elements essential to the establishment thereof." *McInnish v. Sibit* (1953), 114 Ohio App. 490, 19 O.O.2d 476, 183 N.E.2d 237. One obtains a prescriptive easement for a specific use of another's property when he or she uses that property "(a) openly, (b) notoriously, (c) adversely to the neighbor's property rights, (d) continuously, and (e) for at least twenty-one years." *J.F. Gioia*, 23 Ohio App.3d at 36–37, 23 OBR 76, 491 N.E.2d 325.

{¶ 27} The public may acquire an easement by prescription. See *State ex rel. A.A.A. Invests. v. Columbus* (1985), 17 Ohio St.3d 151, 152, 17 OBR 353, 478 N.E.2d 773 (stating that the court "has long recognized" that the public may acquire a prescriptive easement), citing *RR. Co. v. Roseville* (1907), 76 Ohio St. 108, 117–118, 81 N.E. 178. " '[P]ublic easements, as well as others, may be shown by long and uninterrupted use and enjoyment, upon the conclusive legal presumption from such enjoyment that they were, at some anterior period, laid out and established by competent authority.' " Id., quoting *Reed v. Inhabitants of Northfield*, 30 Mass. 94, 13 Pick. (Mass.) 94, 23 Am.Dec. 662; see also *Miller v. W. Carrollton* (Aug. 27, 1991), Montgomery App. No. 12606, 1991 WL 228711 ("A road will become a public road by prescription when the public has continually used the road with the knowledge but without permission of the owner, in a manner adverse to the owner's rights, throughout the statutory period of 21 years"). "Title by prescription to a public street can be shown only by adverse user by the public, under a claim of right, and uninterrupted for twenty-one years." *A.A.A. Invests.* at 152, 17 OBR 353, 478 N.E.2d 773, quoting *Roseville*, paragraph four of the syllabus.

{¶ 28} In *J.F. Gioia*, 23 Ohio App.3d at 38, 23 OBR 76, 491 N.E.2d 325, the court expanded upon the public's right to a prescriptive easement and stated:

As in the case of prescriptive easements which serve adjacent property, a public prescriptive easement results from a specific type of continuous use.

The resulting easement permits the public to continue that same type of use. In effect, a landowner who forebears from effectively disrupting use of his property by his neighbor or the general public eventually accedes to the continuation of that same use. * * * * The public's extended use of property for picnics and recreation may not create an easement to drive vehicles there.

{¶ 29} In analyzing the element of continuous use, we have previously held that "the infrequent or occasional use of a thoroughfare over property is inadequate to demonstrate 'continuous' use for purposes of establishing a prescriptive easement." *Vance v. Roa* (Sept. 7, 2000), Lawrence App. No. 99CA23, 2000 WL 1283075.

{¶ 30} The court in *J.F. Gioia* also addressed the concept of continuous use. There the plaintiff asserted that the trial court improperly rejected a claim for an easement by prescription. In upholding the trial court's decision, the appellate court found that the evidence failed to establish a public easement by prescription. The evidence showed that "at scattered times the public drove or parked on the access drive" (1) to reach a small airport, (2) to reach a business that the plaintiff operated, (3) to turn cars around, (4) to fly model airplanes, (5) to assist police traffic surveillance, and (6) "for evening amatory activity." 23 Ohio App.3d at 38, 23 OBR 76, 491 N.E.2d 325. The court stated that this evidence "fell far short of showing any regular, continuous, public activity on the access drive for independent public purposes. No public prescriptive right results from occasionally parked lovers, police cars, or model plane flyers." Id.

{¶ 31} Here, much of this access by "the public" was done with permission of the prior owner, Thee Johnson. But even if we were to assume that the evidence supports the trial court's finding of adverse public use, the evidence does not support a finding of continuous public use for a 21–year period. As in *J.F. Gioia*, the evidence in this case fails to clearly and convincingly show continuous adverse public use for a 21–year period. The evidence, at best, shows scattered public adverse use mixed with periods of permissive use. Some witnesses used the disputed right of way on occasion with Johnson's permission to reach hunting grounds. Some used it, again occasionally, to reach Fitzpatrick's property. However, no one testified to continuous adverse public use for a 21–year period. This scattered use is not sufficient to demonstrate continuous, uninterrupted use for a period of 21 years. *Vance* and *J.F. Gioia*, supra.

{¶ 32} The best evidence that Fitzpatrick offered was his father's testimony that he used the alleged right of way on a monthly basis for a period of 40–some years. This evidence may be relevant to a private easement by prescription. However, a private easement by prescription was not the basis for the court's decision. Because the trial court did not rule on this issue, we remand this

matter to the trial court so that it can ascertain whether the evidence clearly and convincingly shows all of the required elements of a private easement by prescription. However, we express no opinion regarding the merits of Fitzpatrick's entitlement to a private easement by prescription.

{¶ 33} Accordingly, we sustain Palmer's first assignment of error to the extent that it challenges the trial court's finding of a public prescriptive easement. Our resolution of this issue renders moot Palmer's remaining argument in his first assignment of error that the trial court abused its discretion by amending the pleadings to conform to the evidence, and we need not address it. See App.R. 12(A)(1)(c). We reject Palmer's second assignment of error to the extent that he argues that the trial court found a prescriptive private easement. Rather, because the trial court did not address that issue, we remand to the trial court for further proceedings.

### D. EASEMENT BY NECESSITY

{¶ 34} In his third assignment of error, Palmer argues that the trial court's finding that Fitzpatrick established an easement by necessity is against the manifest weight of the evidence.

{¶ 35} "Easements implied of necessity are not favored because, like implied easements generally, they are 'in derogation of the rule that written instruments shall speak for themselves.'" *Tiller v. Hinton* (1985), 19 Ohio St.3d 66, 69, 19 OBR 63, 482 N.E.2d 946, quoting *Ciski v. Wentworth* (1930), 122 Ohio St. 487, 172 N.E. 276, paragraph one of the syllabus. "An implied easement or way of necessity is based upon the theory that without it the grantor or grantee, as the case may be, can not make use of his land. It has been stated that 'necessity does not of itself create a right of way, but is said to furnish evidence of the grantor's intention to convey a right of way and, therefore, raises an implication of grant.' 17 American Jurisprudence 961, Section 48." *Trattar v. Rausch* (1950), 154 Ohio St. 286, 293, 43 O.O. 186, 95 N.E.2d 685.

{¶ 36} "[S]tringent requirements must be met before an encumbrance upon land will be implied." *Tiller* at 70–71, 19 OBR 63, 482 N.E.2d 946. To establish an easement by necessity, the plaintiff must present clear and convincing evidence on each of the following elements: "(1) that there is a severance of the unity of ownership in an estate, (2) that before the separation takes place, the use that gives rise to the easement must have been so long continued and obvious or manifest as to show that it was meant to be permanent, (3) that the easement is [strictly [2]] necessary to the beneficial enjoyment of the land granted or

---

2. The third element as expressed in *Cadwallader* actually states that the easement must be "reasonably" necessary. However, the court later recognizes that this third element changes

retained, and (4) that the servitude is continuous as distinguished from a temporary or occasional use only." *Cadwallader*, 178 Ohio App.3d 26, 2008-Ohio-4166, 896 N.E.2d 748, at ¶ 15, citing *Campbell v. Great Miami Aerie No. 2309, Fraternal Order of Eagles*, 15 Ohio St.3d 79, 15 OBR 182, 472 N.E.2d 711, citing *Ciski* ; see also *Tiller* at 69, 482 N.E.2d 946; *Trattar* at paragraph eight of the syllabus; *Ciski* at the syllabus; *Vance v. Roa* (2000), Lawrence App. No. 99CA23, 2000 WL 1283075 (stating that easements that arise from necessity require a plaintiff to prove "[c]ommon ownership of both the dominant and servient estate[s]"). "It is a well settled rule that a use must be continuous, apparent, permanent and necessary to be the basis of an implied easement upon the severance of the ownership of an estate." *Trattar* at 292, 43 O.O. 186, 95 N.E.2d 685.

{¶ 37} In *Watson v. Neff*, Jackson App. No. 08CA12, 2009-Ohio-2062, 2009 WL 1175168, at ¶ 14, we discussed the unity-of-title requirement and stated:

The unity of title requirement accords with the principles of implied easements. Implied easements are easements read into a deed. "An implied easement is based upon the theory that whenever one conveys property he includes in the conveyance whatever is necessary for its beneficial use and enjoyment and retains whatever is necessary for the use and enjoyment of the land retained." *Trattar*, supra, at 291[, 43 O.O. 186, 95 N.E.2d 685]. In other words, implied easements are those easements that a reasonable grantor and grantee would have expected in the conveyance, and a court will read the implied easement into a deed where the elements of that implied easement exist. However, if there is no unity of title, there is no grantor who may give an easement to the grantee. It does not matter whether a reasonable grantor would have conveyed an easement or a reasonable grantee would have expected to receive an easement. A grantor simply cannot convey what is not possessed.

{¶ 38} In imposing the strict-necessity element, the law is abundantly clear that a court may not imply an easement "where there is an alternative outlet to a public way, even though it is less convenient or more expensive." *Tiller*, 19 Ohio St.3d at 69, 19 OBR 63, 482 N.E.2d 946, citing *Trattar* ("A way of necessity will not be implied where the claimant has another means of ingress or egress, whether over his own land or over the land of another"); see also *Cadwallader v. Scovanner*, 178 Ohio App.3d 26, 2008-Ohio-4166, 896 N.E.2d 748, at ¶ 30; *Hawn v. Pleasant* (June 1, 1999), Scioto App. No. 98CA2595, 1999 WL 366584 (" 'Strict necessity' must exist to justify the implication of an easement by

---

to "strict" necessity when the allegation is an easement implied by necessity as opposed to one implied by prior use. See our discussion below regarding the difference between an easement implied by prior use as opposed to one implied by necessity.

necessity where there is an alternative outlet to a public road, even though the alternate route may be less convenient and more expensive"). "[T]he party claiming an implied easement must prove that the dominant estate is 'visibly dependent' on that easement in order to fully enjoy the property." *Swayne v. Roof* (Dec. 18, 2001), Scioto App. No. 01CA2766, 2001 WL 1682943. As the court explained in *Trattar*, 154 Ohio St. at 294–295, 43 O.O. 186, 95 N.E.2d 685:

"It is a general rule that one cannot derogate from his grant; so that, to warrant the inference of a way reserved by implication, it must be one of strict necessity to the remaining lands of the grantor. It is not merely a matter of convenience, and, if the grantor has another mode of access to his land, however inconvenient, he cannot claim a way by implication in the lands conveyed, though he may have been in the use of a way over it to a public highway at and a long time before the conveyance, and of which the grantee had notice at the time." [*Meredith v. Frank*, 56 Ohio St. 479, 47 N.E. 656, paragraph two of the syllabus]. Compare *Jordan v. Breece Mfg. Co.*, 89 Ohio St. 311, 106 N.E. 46.

A way of necessity will not be implied, where there is another or other outlets available to a public thoroughfare, even though such other outlets are less convenient and would necessitate the expenditure of a considerable sum of money to render them serviceable. 15 Ohio Jurisprudence 62, Section 44.

The above proposition is well stated by the Supreme Court of Appeals of Virginia in *Jennings v. Lineberry*, 180 Va. 44, 48, 49, 21 S.E.2d 769, 770, 771, as follows:

"A right of way of necessity does not arise if there be already another mode of access to the land, though less convenient or more expensive to develop.

" * * *

"A way of necessity will not be decreed unless the evidence showing the need therefor is clear and convincing. Such a way is not sanctioned when there is available another means of ingress and egress to and from the claimant's land even though it may be less convenient and will involve some labor and expense to repair and maintain."

Although it would be much more convenient and much less expensive for plaintiffs to traverse defendant's property to reach a public street, the imposition of such a burden on defendant's land on the theory of a way of necessity is legally unwarranted in the circumstances exhibited by the record.

{¶ 39} Moreover, the plaintiff must show that the use of the alleged right of way is permanent in character.

For a use to be permanent in character "it is required that the use shall have been so long continued prior to the severance and so obvious as to show that it

was meant to be permanent; a mere temporary provision or arrangement made for the convenience of the entire estate will not constitute that degree of permanency required to burden the property with a continuance of the same when divided or separated by conveyance to different parties." 28 C.J.S., Easements, § 33, page 691, 692; and 15 Ohio Jurisprudence, 41, Section 31. Id. at 292, 43 O.O. 186, 95 N.E.2d 685.

{¶ 40} Here, no clear and convincing evidence supports a finding of an easement by necessity. Even if such evidence supports a finding of unity of title (an issue we do not address), no competent, credible evidence supports a finding that the alleged right of way is strictly necessary. The evidence shows that an alternate route exists to reach Fitzpatrick's property. Although inconvenient and potentially expensive, an alternate route exists. The case law is clear that a court will not imply an easement by necessity when an alternative, albeit inconvenient and more expensive, route exists.

{¶ 41} We are aware that the trial court, in finding an easement by necessity, did not employ the strict-necessity standard but instead employed a standard of reasonable necessity. However, this reasonable-necessity standard applies to easements implied by prior use, not to easements implied by necessity. *Wheeler v. McBride*, 178 Ohio App.3d 367, 2008-Ohio-5109, 897 N.E.2d 1197, at ¶ 22–28, citing *Metro. Home Invest. Corp. v. Ivy Hill Condominium Assn.* (Dec. 4, 1998), Trumbull App. Nos. 97–T–30 and 97–T–143, 1998 WL 964591; see also *Cadwallader*, 178 Ohio App.3d 26, 2008-Ohio-4166, 896 N.E.2d 748, and *Arkes v. Gregg*, Franklin App. No. 05AP–202, 2005-Ohio-6369, 2005 WL 3220209, at ¶ 11–14, which contains an excellent explanation of the difference between these two implied easements. Because there has been no allegation or finding of an easement implied by prior use, the reasonable-necessity standard is not the correct standard.

{¶ 42} Accordingly, we sustain Palmer's third assignment of error.

## IV. VACATION OF TOWNSHIP ROAD 161

{¶ 43} In his fourth assignment of error, Palmer contends that the trial court erred by determining that the commissioners did not intend to vacate the part of Township Road 161 that leads to the alleged right of way. Palmer asserts that in reaching its decision, the trial court improperly considered parol evidence.[3]

---

3. Although we question the procedural regularity of Fitzpatrick's challenge in the trial court proceedings to the commissioners' resolution vacating the township road, because Palmer has not addressed it, we do not. Furthermore, because this case did not originate as an appeal from the commissioner's decision, the procedural regularity of the vacation proceedings is beyond the scope of this appeal.

{¶ 44} The act of vacating a street is a legislative act. *Eastland Woods v. Tallmadge* (1983), 2 Ohio St.3d 185, 188, 2 OBR 726, 443 N.E.2d 972; *Ohio Multi–Use Trails Assn. v. Vinton Cty. Commrs.*, 182 Ohio App.3d 32, 2009-Ohio-2061, 911 N.E.2d 350, at ¶ 12. Thus, we apply the interpretive standards that apply to legislative acts when interpreting a county commissioners' resolution vacating a roadway.

{¶ 45} The interpretation of a statute is a question of law that we review independently and without deference to the trial court. *Washington Cty. Home v. Ohio Dept. of Health*, 178 Ohio App.3d 78, 2008-Ohio-4342, 896 N.E.2d 1011, at ¶ 27.

{¶ 46} In construing a statute, a court's paramount concern is the legislature's intent in enacting it. See, e.g., *State ex rel. Cincinnati Enquirer v. Jones–Kelley*, 118 Ohio St.3d 81, 2008-Ohio-1770, 886 N.E.2d 206, at ¶ 17; *State ex rel. Russell v. Thornton*, 111 Ohio St.3d 409, 2006-Ohio-5858, 856 N.E.2d 966, ¶ 11. " 'The court must look to the statute itself to determine legislative intent, and if such intent is clearly expressed therein, the statute may not be restricted, constricted, qualified, narrowed, enlarged or abridged; significance and effect should, if possible, be accorded to every word, phrase, sentence and part of an act * * *.' " *State ex rel. McGraw v. Gorman* (1985), 17 Ohio St.3d 147, 149, 17 OBR 350, 478 N.E.2d 770, quoting *Wachendorf v. Shaver* (1948), 149 Ohio St. 231, 36 O.O. 554, 78 N.E.2d 370, paragraph five of the syllabus. To determine legislative intent, a court must " 'read words and phrases in context and construe them in accordance with rules of grammar and common usage.' " *Washington Cty. Home* at ¶ 28, quoting *State ex rel. Russell v. Thornton*, 111 Ohio St.3d 409, 2006-Ohio-5858, 856 N.E.2d 966, at ¶ 11. "In construing the terms of a particular statute, words must be given their usual, normal, and/or customary meanings." *Proctor v. Kardassilaris*, 115 Ohio St.3d 71, 2007-Ohio-4838, 873 N.E.2d 872, ¶ 12.

{¶ 47} When the language of a statute is plain and unambiguous and conveys a clear and definite meaning, there is no need to apply rules of statutory construction. Id.; see also *Cline v. Ohio Bur. of Motor Vehicles* (1991), 61 Ohio St.3d 93, 96, 573 N.E.2d 77; *Sears v. Weimer* (1944), 143 Ohio St. 312, 28 O.O. 270, 55 N.E.2d 413, paragraph five of the syllabus. However, when a statute is subject to various interpretations, a court may invoke rules of statutory construction to arrive at legislative intent. R.C. 1.49; *Cline*, supra.

{¶ 48} In this case, there is no ambiguity in the commissioners' resolution approving the vacation of Township Road 161. It states that the commissioners approved Palmer's petition "[t]o vacate a portion of Fayette Township Road 161 (portion of road bordered on both sides by the property of George Palmer * * *). Utility easements to remain as stated. Survey to be recorded by Nate Dickerson upon completion." Fitzpatrick attempts to create an ambiguity

by asserting that the commissioners did not intend to vacate the part that led to his alleged right of way. However, a plain reading of the resolution reveals that no ambiguity exists concerning what part of Township Road 161 the commissioners vacated. The resolution states that the commissioners vacated the part of Township Road 161 that borders both sides of Palmer's property. The resolution does not state that the road remains open up to the alleged right of way. Because the resolution is not ambiguous, the trial court erred as a matter of law by using Dickerson's testimony to ascertain the commissioner's intent. That intent is in the plain language of the resolution. Had the commissioners intended to vacate only the land as described by Dickerson, they should have waited for Dickerson to complete his survey before approving the vacation. And had Fitzpatrick wished to challenge the commissioners' act of vacating the road, he should have employed the appropriate procedural methods. See R.C. Chapter 5553; see also *State ex rel. Lindenschmidt v. Butler Cty. Bd. of Commrs.* (1995), 72 Ohio St.3d 464, 468, 650 N.E.2d 1343; *Southworth v. Pike Cty. Bd. of Commrs.*, Pike App. No. 08CA783, 2009-Ohio-566, 2009 WL 296399; *Trowbridge v. Scioto Cty. Bd. of Commrs.* (June 24, 1998), Scioto App. No. 97CA2527, 1998 WL 340698 (all stating that R.C. Chapter 5553 provides the exclusive means for appealing a board of county commissioners order to vacate a road). Having failed to do so, he cannot now seek to change the result by arguing ambiguity where none exists.[4]

{¶ 49} Accordingly, we sustain Palmer's fourth assignment of error.

## V. OBJECTIONS TO MAGISTRATE'S DECISION

{¶ 50} In his fifth assignment of error, Palmer argues that the trial court erred by overruling his objections to the magistrate's decision.

{¶ 51} Our resolution of Palmer's first four assignments of error renders this assignment of error moot, and we need not address it. See App.R. 12(A)(1)(c).

## VI. CONCLUSION

{¶ 52} Accordingly, we overrule Palmer's fifth assignment of error. We sustain his second assignment of error in part and sustain his third and fourth assignments of error. We sustain his first assignment of error to the extent that he asserts that the trial court's finding of a public easement by prescription is against the manifest weight of the evidence. We overrule as moot his first assignment of error as it relates to the trial court's decision amending the

---

4. Our decision does not address what impact the vacation of Township Road 161 may have on Fitzpatrick's right to gain access to any prescriptive easement he might establish upon remand.

pleadings to conform to the evidence. We reverse the trial court's judgment and remand the cause.

Judgment reversed
and cause remanded.

KLINE, P.J., and ABELE, J., concur.