[Cite as *Queen v. Hanna*, 2012-Ohio-6291.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
SCIOTO COUNTY

| | | |
|---|---|---|
| ALVA L. QUEEN, | : | Case No. 11CA3447 |
| | : | |
| Plaintiff-Appellant, | : | |
| | : | DECISION AND |
| v. | : | JUDGMENT ENTRY |
| | : | |
| MARIE HANNA, et al., | : | |
| | : | **RELEASED 12/13/12** |
| | : | |
| Defendants-Appellees. | : | |

_____

APPEARANCES:

Stanley C. Bender, Portsmouth, Ohio, for appellant.

Rick. L. Faulkner and Kenneth W. Porter, The Faulkner Law Office, Wheelersburg, Ohio, for appellees Michael and Joyce Hanna.[1]

_____

Harsha, J.

{¶1}     This appeal involves "Blackacre" and "Whiteacre" and "the bundle of sticks" known to law professors and their students as property rights.  And as is often the case with such archaic matters, it is usually known to practicing lawyers and judges as a PITA.  Alva Queen brought a quiet title action against Marie Hanna, Michael Hanna, Joyce Hanna, the unknown heirs of Sylvester Birch, and the unknown heirs of the unknown heirs of Sylvester Birch with regard to a private road.  This road connects the Hanna land to a public road and runs along the northeast border of two tracts of land Queen owns, which we will refer to as the "Queen property" and the "Eric Martin

---

[1] The unknown heirs of Sylvester Birch and unknown heirs of his unknown heirs have not entered an appearance or otherwise participated in this appeal.  Defendant Marie Hanna passed away prior to the conclusion of proceedings at the trial level.

property."[2]  The trial court granted the Hannas a default judgment against the unknown

heirs on the issue of fee simple ownership of the private road.  In addition, the court

found that Queen's properties did not have a prescriptive easement over the road.

{¶2}   Queen contends that the court erred when it granted the Hannas a default

judgment on the issue of fee simple ownership.  We agree but for different reasons than

Queen advances.  The trial court heard evidence on the issue of fee simple ownership,

and this evidence shows that the unknown heirs own the road, not the Hannas.

Therefore, the court abused its discretion by issuing a default judgment contrary to the

evidence.

{¶3}   Next, Queen argues that the court's finding that he failed to show 21 years

of continuous use of the private road to access the Queen property was against the

manifest weight of the evidence.  However, by Queen's own testimony the earliest time

someone used the private road to access a trailer on the Queen property was 1980.

There was at minimum a five-year period from 1987 to 1992 when no one used the

private road for this purpose.  The court could reasonably conclude such a gap

constituted an abandonment of use.  And because 21 years have not elapsed since the

prescriptive easement clock started to run again in 1992, the court's finding was not

against the manifest weight of the evidence.

{¶4}   Finally, Queen claims that the court's finding that he failed to show 21

years of continuous use of the private road to access the Eric Martin property was

against the manifest weight of the evidence.  We agree.  The undisputed evidence at

---

[2] The Appendix contains a copy of a map Queen introduced at trial which depicts the location of the different properties with respect to the private road and the public road (Martin Road).  The area marked Henry Hannah is the Hanna property.  The area of the map marked Annie A. Queen is what we will refer to as the Queen property.  And the area marked Eric Grey Martin is what we will refer to as the Eric Martin property.

trial established that Queen and his predecessors continuously used the private road to access the Eric Martin property for the requisite time period. Thus, we conclude the court's finding was against the manifest weight of the evidence. We affirm the trial court's judgment in part, reverse it in part, and remand for further proceedings.

I. Facts

{¶5}   In 2006, Alva Queen filed a quiet title action against Marie Hanna regarding a private road that connected her land to Martin Road (a public road) and that runs along the northeast border of Queen's land. Queen alleged that he owned the private road in fee simple and that Marie had an easement by deed. He claimed that Marie had interfered with his use of the road. In addition, Queen alleged that the parties disputed the location of the common boundary line between their properties and the location of the easement. Queen asked the trial court to resolve these issues and enjoin Marie from interfering with his use of the road. In her answer, Marie claimed that she owned the road in fee simple and filed a counterclaim against Queen for trespass.

{¶6}   Queen later came to believe that Sylvester Birch obtained fee simple ownership of the road by virtue of a 1914 deed. Presuming Birch was now deceased, Queen argued that the unknown heirs of Sylvester Birch owned the road in fee simple, that Marie at most had an easement by deed, and that Queen had a prescriptive easement. The parties filed briefs on the issue, and the court issued a judgment entry finding that Marie was the fee simple owner.[3]   Afterwards, Marie conveyed her land to

---

[3] After issuing this entry, the trial court issued a nunc pro tunc entry stating that its fee simple determination was a "final appealable order." At trial, the Hannas argued that this entry was a final order. It is not. When the court issued the entry, issues remained unresolved such as Marie's counterclaim for trespass, and the court failed to expressly state that there was no just reason for delay of appeal. *See* Civ.R. 54(B); *Jarvis v. Staley*, 4th Dist. No. 10CA15, 2012-Ohio-3832, ¶ 9-10. Moreover, the court issued the entry before the unknown heirs were parties, thus it could not be a final order as between the Hannas and the unknown heirs.

her children, Michael and Joyce, and reserved a life estate for herself.

{¶7}    Subsequently, Queen filed an amended complaint with leave of court, naming Marie, Michael, Joyce, the unknown heirs of Sylvester Birch, and the unknown heirs of the unknown heirs as defendants.  He alleged that Birch obtained fee simple ownership of the road in 1914, was presumed dead, and the identity and whereabouts of Birch's heirs was unknown and could not be ascertained.  Queen alleged that the Hannas claimed an interest in the road and that he had a prescriptive easement regardless of who owned the road.  In addition, Queen claimed that a controversy existed over the common boundary line between his property and the road.  He asked the court to determine the boundary line and find that he established a prescriptive easement over the road.  The Hannas filed a joint answer to the amended complaint and asked that "their Counter Claim as set forth previously be adjudicated and that they be granted the relief as demanded therein."[4]  The unknown heirs were served by publication and did not file an answer to the amended complaint.

{¶8}    Marie passed away, and the court conducted a bench trial, where Queen, Michael, and Joyce participated.  During trial, the court heard testimony about two properties Queen owns, which we refer to as the "Queen property" and the "Eric Martin property."  The Queen property is bordered on the southeast by Martin Road and is partially bordered on the northeast by the private road.  The Eric Martin property is bordered on the northeast by the private road.  The remainder of the property is surrounded by the Queen property.  Thus, the Eric Martin property is landlocked.  It can only be accessed from the private road or the Queen property.  *See* footnote 2 and the

---

[4] Although none of the parties raise the issue, the Hannas never amended the previously filed counterclaim to account for the fact that only Marie made it, not Michael or Joyce.

Appendix.

{¶9}    Queen's parents purchased the Queen property from his aunt in 1971. Queen testified that to his knowledge, his parents believed they owned the private road. In 2001, Queen obtained ownership of the Queen property. Queen and his family used the private road from 1971 to the present. Queen acknowledged they did not use the road every day or every week, just whenever they needed to. In addition, his brother, Walter Queen, put a trailer on the Queen property in 1980 or 1981 and lived there "five-six years, maybe." Walter used the private road to access the trailer. Queen introduced into evidence a photograph of the trailer, which had a deck built off of it. He also introduced a July 1985 photograph showing a wooden post that he claimed was on the Queen property in the course of building the deck. After Walter moved, Queen's parents rented that area of the property to Randy and Missy Keys, who put their own trailer on it. That occurred in 1992, 1993, or 1996. The Keys used the private road to access their trailer. Queen's daughter, Debbie Maynard, put a second trailer on the Queen property in 2002 or 2003. She lived there and also used the private road. When Maynard moved out in 2007, Queen purchased the trailer and rented it out. Queen indicated he also currently rents out the Keys' trailer.

{¶10}   Queen testified that at one point his parents owned the Eric Martin property. They sold it to his sister, Jenny Carver, and her husband Ben around 1973. The Carvers lived there for four or five years before moving and selling the property to someone named Snyder. Queen testified that the government took the property from Snyder and sold it to Eric Martin, who rented it to other people. A deed in the trial exhibits indicates that the Secretary of Veterans Affairs conveyed the property to Eric in

1993.  According to Queen, Eric had tenants who used the private road to access the land.  Queen bought the property from Eric in 2009.[5]  Queen now rents out a doublewide trailer on the property.

{¶11}  Bill Martin, Eric Martin's father, testified that in 1980 or 1981 he put a trailer on a certain portion of the Queen property for Walter Queen.  He cut in a road from the trailer to the private road.  He installed a "complete sewer system."  Bill claimed Walter kept the trailer there "several years."  He identified the trailer in one of Queen's photographs.

{¶12}  Michael Hanna testified that his parents purchased the Hanna property in 1967 and that he and Joyce now owned the land.  He has lived on the Hanna property since the late 1960s when he was a teenager.  The first time he ever saw Queen, Queen's parents or "anybody on their behalf" on the private road was 1999 or 2000.  He testified before that time, one could not access the Queen property from the private road because of a fence.  Michael denied that the Walter Queen trailer existed.  Michael never saw a trailer in that location prior to 1999.  The only trailers he ever saw on the Queen property are the two currently there.

{¶13}  Joyce Hanna testified that she moved to the Hanna property in 1966 or 1967.  She never saw Walter Queen's trailer on the Queen property in the 1980s.  Prior to 1999, a four strand barb wire fence blocked the Queen property from the private road.  In 1999, Queen cut the fence and made a driveway from the Queen property to the private road.  Queen put trailers in after that.  On direct examination, defense counsel asked Joyce if she had any problems with the Eric Martin property having an

---

[5] Eric Martin actually conveyed the property to Alva Queen and Deborah Maynard "for their joint lives, remainder in fee simple to the survivor of them[.]"  Deborah Maynard is not a party to this litigation, but no one raises the issue.

easement over the private road. Joyce did not and agreed with counsel's statement that "[t]hat's the way it's always been[.]" On cross-examination, Joyce testified that there was single wide trailer on the Eric Martin property when she moved to the Hanna property in 1967. She acknowledged that from 1967 until trial, the Eric Martin property had been accessed by the private road.

{¶14} During trial, Queen orally requested a default judgment against the unknown heirs for a prescriptive easement. The court did not resolve the motion at that time. After trial, Queen and the Hannas attempted to draft an agreed entry for default judgment against the unknown heirs. The Hannas requested a hearing because the parties could not agree on the wording of the entry. At the hearing, Queen argued that he was entitled to a default judgment on his claim for prescriptive easements. The Hannas argued that they were entitled to a default judgment against the unknown heirs on the issue of fee simple ownership.

{¶15} Subsequently, the court issued the following judgment entry:

> The Court finds by Nunc Pro Tunc Judgment Entry dated June 10, 2009, this Court made a determination that the Hannas are the fee simple owners of the "contested roadway". However, later it was determined that the unknown heirs of Sylvester Birch were the lawful titled owners, and that they had not been a part of the litigation at the time of trial. The Court further finds that the unknown heirs of Sylvester Birch had been served by publication, and are in default of answer.
>
> So again, this Court will make its original finding that Marie Hanna and Michael Hanna are the fee simple owners of the "contested roadway".[6]
>
> The sole issue remaining for this Court to determine is whether the Plaintiff has proven an easement by prescription against the owners in fee simple of the disputed road.

---

[6] Though none of the parties raise the issue, it appears the court erroneously stated that Marie and Michael owned the property and actually meant to find that Joyce and Michael owned the property in light of the fact that Marie passed away before trial, meaning her life estate expired.

* * *

The Plaintiff[ ] has met [all of the requirements] with the exception of not showing [he] continuously used the roadway for a period of twenty-one years.

* * *

[And as] for the elements of damages alleged in Defendants' Counterclaim, the Court * * * will grant judgment in the sum of $1800.00 against the Plaintiff for the increased cost of gravel to maintain the roadway.

There being no just reason for delay, this is a final appealable order.[7]

**{¶16}** This appeal followed.

## II.  Assignments of Error

**{¶17}** Queen assign the following errors for our review:

### ASSIGNMENT OF ERROR NO. ONE

**THE TRIAL COURT ERRED AS A MATTER OF LAW IN DETERMING THAT HANNAS ARE THE OWNERS IN FEE SIMPLE OF THE DISPUTED ROAD.**

### ASSIGNMENT OF ERROR NO. TWO

**THE TRIAL COURT ERRED IN DETERMINING THAT QUEEN DID NOT ESTABLISH A PRESCRIPTIVE EASEMENT OVER THE ROAD**

## III.  Fee Simple Ownership

**{¶18}** In his first assignment of error, Queen contends that the trial court abused its discretion when it granted the Hannas a default judgment against the unknown heirs on the issue of fee simple ownership because the Hannas never filed a cross claim. Queen argues that based on the deeds in evidence, the unknown heirs own the

---

[7] Although none of the parties raise the issue, the court's judgment entry makes no mention of the boundary line dispute issue Queen raised in his complaint and amended complaint.  It appears from the entry the court thought it resolved all the issues.  The entry does contain Civ.R. 54(B) language, however.

property in fee simple.  The Hannas suggest that in a quiet title action, a defendant can obtain a default judgment against a co-defendant without filing a cross claim.  The Hannas also maintain that they are the fee simple owners by deed in any event.

{¶19}  In its judgment entry, the court states that "it was determined that the unknown heirs of Sylvester Birch were the lawful titled owners, and that they had not been a part of the litigation at the time of trial."  Next, the court states that it "further finds that the unknown heirs of Sylvester Birch had been served by publication, and are in default of answer.  So again, this Court will make its original finding that Marie Hanna and Michael Hanna are the fee simple owners of the 'contested roadway'."  Thus, despite its conclusion that the unknown heirs owned the road in fee simple, the court granted the Hannas a default judgment against the heirs on this issue.

{¶20}  Even if we assume, without deciding, that in a quiet title action a defendant can obtain a default judgment against a co-defendant without filing a cross claim, we nonetheless conclude that the trial court abused its discretion when it granted the Hannas a default judgment in this case.  Under Civ.R. 55(A), "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules, the party entitled to a judgment by default shall apply in writing or orally to the court therefor * * *."  We review a trial court's decision to grant or deny a motion for default judgment for an abuse of discretion.  *See Dye v. Smith*, 189 Ohio App.3d 116, 2010-Ohio-3539, 937 N.E.2d 628, ¶ 7 (4th Dist.).  The phrase abuse of discretion connotes an attitude on the part of the court that is unreasonable, unconscionable, or arbitrary.  *State v. Adams*, 62 Ohio St.2d 151, 157, 404 N.E.2d 144 (1980).  When applying the abuse of discretion standard, a reviewing court is not free to

merely substitute its judgment for that of the trial court.  *In re Jane Doe 1*, 57 Ohio St.3d 135, 138, 566 N.E.2d 1181 (1991).

**{¶21}**  "If, in order to enable the court to enter judgment or to carry it into effect, it is necessary to take an account or to determine the amount of damages or to establish the truth of any averment by evidence or to make an investigation of any other matter, the court may conduct such hearings or order such references as it deems necessary and proper and shall when applicable accord a right of trial by jury to the parties." Civ.R. 55(A).  " 'Clearly, Civ.R. 55(A) makes it discretionary with the trial court to decide if a hearing is necessary.  It has always been within the discretion of the trial court to determine whether further evidence is required to support a claim against a defaulting defendant.' "  *CitiMortgage, Inc. v. Kermeen*, 2nd Dist. No. 2011 CA 2, 2012-Ohio-1655, ¶ 35, quoting *Buckeye Supply Co. v. Northeast Drilling Co.*, 24 Ohio App.3d 134, 136, 493 N.E.2d 964 (9th Dist.1985).  "If the court hears evidence, 'it follows that the court should make its decision conform to the law as applicable to the facts proven, and if no cause of action is shown no default judgment in [the moving party's] favor should be rendered.' "  *Id.*, quoting *Regency Centre Dev. Co. v. Constr. Dimensions, Inc.*, 8th Dist. No. 81171, 2003-Ohio-5067, ¶ 15, in turn, quoting *Streeton v. Roehm*, 83 Ohio App. 148, 152, 81 N.E.2d 133 (1st Dist.1948).  Thus, if after hearing the evidence without objection from the moving party, the court determines the moving party failed to meet his burden under the applicable law, the court abuses its discretion if it grants a default judgment.  *See Regency Centre Dev. Co.* at ¶ 16.

**{¶22}**  Here, none of the parties requested a default judgment against the unknown heirs prior to trial.  Queen orally moved for a default judgment for prescriptive

easements after trial began. The Hannas did not explicitly request a default judgment on the issue of fee simple ownership until the trial concluded. Thus, the trial court heard evidence on the matter of fee simple ownership at trial, despite the Hannas incorrect claim that a final order existed on that issue. *See* footnote 3, *supra*. "It was, therefore, incumbent upon the trial court to conform to the law as applicable to the facts adduced at the trial." *Regency Centre Dev. Co.* at ¶ 16. As we explain below, the trial court abused its discretion when it failed to do so in this case.

**{¶23}** The trial court found, and we agree, that the unknown heirs are the fee simple owners of the road. To reach this conclusion, we interpret the deeds the parties offered into evidence. "It is axiomatic that the construction of written instruments, which includes deeds, is a question of law." *Brannan v. Easter*, 4th Dist. No. 11CA3428, 2012-Ohio-2045, ¶ 5. Therefore, our standard of review is de novo. *Id.* We afford no deference to the trial court's interpretation of the deeds at issue and independently determine who has fee simple ownership of the road. *See McCarley v. O.O. McIntyre Park Dist.*, 4th Dist. No. 99CA07, 2000 WL 203997, *7 (Feb. 11, 2000). "When interpreting a written conveyance, we will not go beyond the four corners of the instrument when it is worded in clear and precise terms and the meaning is evident on its face." *Id.*

**{¶24}** "An easement is an interest in the land of another that entitles the easement holder to some limited use of the land (*e.g.* right of way for ingress/egress) on which the interest exists." *Id.* Whether an instrument grants an easement or a fee depends on the language of the grant. *See id.* "When the instrument conveys a 'right' rather than a tract or strip of land, courts construe the conveyance as granting an

easement rather than a fee." *Id.* "Conversely, when the granting clause of an

instrument specifically conveys land, the instrument generally conveys a fee interest in

the land described." *Id.* A granting clause is "[t]he words that transfer an interest in a

deed or other instrument * * *." *Black's Law Dictionary* 310 (2d Pocket Ed.2001).

**{¶25}** The first relevant conveyance was executed in a 1914 deed. The parties

agree that through this instrument, the Martins gave Birch fee simple ownership of the

road, as opposed to an easement by deed. The granting clause in the 1914 deed

states:

> Robert Martin and Ella Martin, his wife * * * *hereby Grant, Bargain, Sell and Convey, to the said* Sylvester Birch his *heirs and assigns forever* [t]he following described Real Estate, situate[d] in the East One-half of the S.W. ¼, Section Thirty-three, Township Four, Range Nineteen, Bloom Township, Scioto County, Ohio, being a strip of ground twelve and one half (12 ½[)] feet wide on each side of the fol-lowing described center line, to wit: Beginning at a stone at the Southeast corner of the West One-half of N.W. ¼, Section Thirty-three, Township Four, Range Nineteen; thence S. 45 ¾° E. 371.25 feet (22 /12 rods); thence S. 54° E. 363 feet (22 rods); thence S 66 ½° E. 165 feet (10 rods) to a stake on the East bank of the creek; thence S. 86° E. 33 feet (2 rods); thence S. 54° E. 33 feet (2 rods); thence S. 28° E. 66 feet (4 rod[s]) to the center of the Township Road leading from Scioto Furnace to Chaffin's Mills on Pine Creek, and containing 71/100 of an acre, more or less.[8]

**{¶26}** The clause states that the Martins granted, bargained, sold, and conveyed

to Birch "Real Estate * * * being a strip of ground," not merely a "right" to land. This

language suggests the Martins transferred a fee simple interest to Birch, not an

easement. The granting clause also includes a metes and bounds description of the

land – the road at issue in this case – which is typical in a conveyance of a fee interest.

*McCarley* at *7. Nothing in the granting clause suggests the Martins conveyed an

easement; the clause unambiguously conveyed the road to Birch in fee simple.

---

[8] We used italics to designate the pre-printed portions of the deed; the remainder of the language is handwritten.

**{¶27}** The 1914 deed also contains a habendum clause. A habendum clause is "one that follows the granting clause." *Brannan*, *supra*, at ¶ 9, fn. 3, citing *Black's Law Dictionary* 639 (5th Ed. 1979). The habendum clause of the 1914 deed states:

> It is the intention of the grantor herein to convey to the grantee the premises herein described for a right of way and road twenty five wide and 1031.25 feet long, for the uses of the grantee his heirs and assigns forever. The grantee herein is to have crossings over said above described road at convenient places so as to enter his different tracts of land over the road herein described * * *.

**{¶28}** The language referring to a "right of way" and Birch having "crossings over" the road to enter his land is consistent with the grant of an easement. However, a habendum clause "may modify, limit, and explain the grant, but cannot defeat it when the granting language is clear and unambiguous." *McCarley* at *8. "[W]hen a conflict exists between language in a granting clause and language in an habendum clause, the former takes precedence over the latter." *Brannan* at ¶ 9. Because the granting clause unambiguously conveyed the road to Birch in fee simple, we disregard the language of easement in the habendum clause. Therefore, we agree with the parties that Birch obtained the contested road in fee simple in 1914.

**{¶29}** The next relevant document is a 1918 deed Birch and his wife granted to Benjamon Whitt. The Hannas argue that the Birches conveyed the road to Whitt in fee simple. The Hannas claim that Whitt later transferred the property in fee simple, and after a series of additional transactions, they obtained fee simple ownership of the road by deed. Queen contends that the Birches only gave Whitt an easement, so at most the Hannas have an easement because Whitt could not convey a greater interest in the land than he actually had.

**{¶30}** The 1918 deed states:

> Sylvester Birch and Hattie Birch[,] His wife * * * *hereby Grant, Bargain, Sell and Convey to the said* Benjamon Whitt, *his heirs and assigns forever, the following described Real Estate, situate in the* Township *of* Bloom *in the County of* Scioto *and the State of Ohio,* The South west ¼ of the north west quarter of Section no Thirty three (33) in township No Four (4) of Range no nineteen (19) containing 40 acres more or less.  Also granting the right of roadway through the land owned by Robert Martin to township road.  The north west quarter of the northwest quarter of section no Thirty three (33) in township no 4 of Range nineteen (19) containing forty 40 acres more or less.  Also granting the right of road way.  Starting at the north west corner of the quarter Section thirty three 33 – 16 ft wide, running South 60 feet.  The north east quarter of the south east quarter of Section number thirty two (32) Township four (4) of Range nineteen containing forty (40) acres more or less * * *.[9]

**{¶31}** In the first sentence, the Birches conveyed approximately 40 acres of "Real Estate" to Whitt and gave a description of that land, indicating the conveyance of a fee simple interest.  *See McCarley* at *7.  The Hannas implicitly concede that the described land does not encompass the private road.  The second sentence states that the Birches are:  "Also granting the right of roadway through the land owned by Robert Martin to township road."  Even if we presume, as Queen and the Hannas do, that this sentence refers to the contested road, the Birches only conveyed an easement over the road to Whitt, not fee simple ownership.  The second sentence clearly states that Whitt gets a "right of roadway through the land" – language of easement.  *Id.* at *7.  Moreover, the deed does not contain a metes and bounds description of the road, which is typically included in fee simple conveyances.  *Id.*  Therefore, we agree with Queen's position that the 1918 deed at most gave Whitt an easement over the private road, not a fee simple interest in it.  We need not consider the other deeds in the Hanna chain of title because the Hannas cannot have a greater interest in the road than Whitt had.  In other words, the Hannas at best have an easement; they are not the fee simple owners of the road.

---

[9] We used italics to designate the pre-printed portions of the deed; the remainder of the language is handwritten.

**{¶32}**  The record does not contain any evidence that Sylvester Birch conveyed his fee simple interest in the private road after he obtained it in 1914 or had a will.  In the absence of such evidence, his unknown heirs obtained title to the property under the laws of intestacy.  Thus, based on the evidence, the trial court correctly concluded that the unknown heirs own the private road in fee simple.  Because the trial court's decision to enter a default judgment against the unknown heirs contradicted the evidence, the decision was unreasonable and arbitrary and thus constituted an abuse of discretion. Therefore, we sustain the first assignment of error and reverse the portion of the trial court's judgment finding the Hannas own the road in fee simple.

## IV.  Prescriptive Easements

**{¶33}**  In his second assignment of error, Queen contends that the trial court erred when it found he did not have a prescriptive easement over the private road for the Queen property and the Eric Martin property.  Queen argues that if we sustain the first assignment of error, his second assignment of error is moot because "a prescriptive easement has been established against the unknown heirs * * *."  (Appellant's Br. 19). Queen apparently assumes that if the unknown heirs own the road in fee simple, he is automatically entitled to a default judgment against them.  (*See* Appellant's Br. 21).  We disagree with this logic.  As with the issue of fee simple ownership, the trial court heard evidence on whether Queen had prescriptive easements.  Having heard the evidence, the court found that Queen failed to establish continuous use of the road for the requisite 21 year period.  If the court ruled correctly, then Queen is not entitled to a default judgment against the unknown heirs.  *See* Section III above.

**{¶34}**  This appeal involves "easements appurtenant," which are "easements that

typically benefit and/or burden two separate parcels of land, i.e., the dominant tenement (the land benefited) and the servient tenement (the land encumbered by the easement)." *Dunn v. Ransom*, 4th Dist. No. 10CA806, 2011-Ohio-4253, ¶ 29. "An easement may be created by specific grant, prescription, or implication that may arise from the particular set of facts and circumstances." *Fitzpatrick v. Palmer*, 186 Ohio App.3d 80, 2009-Ohio-6008, 926 N.E.2d 651, ¶ 22 (4th Dist.). Queen contends he obtained easements by prescription. " 'Prescription is the acquisition of an easement, over the property of another, through adverse use of that property.' " *Dunn* at ¶ 76, quoting *Crawford v. Matthews*, 4th Dist. No. 97CA2555, 1998 WL 720734, *2 (Sept. 21, 1998). " 'Prescriptive easements are not favored in law, because they deprive the legal property owner of rights without compensation.' " *Id.*, quoting *Fitzpatrick* at ¶ 25.

{¶35} A party " 'who claims an easement by prescription has the burden of proving by clear and convincing evidence all the elements essential to the establishment thereof.' " *Fitzpatrick* at ¶ 26, quoting *McInnish v. Sibit*, 114 Ohio App. 490, 183 N.E.2d 237 (9th Dist.1953), syllabus. Clear and convincing evidence is "evidence that will produce in the factfinder[']s mind a firm belief or conviction as to the facts sought to be established." *Dunn* at ¶ 31. "It is considered a higher degree of proof than a mere preponderance of the evidence, the standard generally used in civil cases, but it is less stringent than the 'beyond a reasonable doubt' standard used in criminal trials." *Fitzpatrick* at ¶ 23.

{¶36} Queen's second of assignment of error challenges the weight of the evidence supporting the trial court's decision. "The standard of review for weight-of-the-evidence issues, even where the burden of proof is clear and convincing evidence,

retains its focus upon the existence of 'some competent, credible evidence.' " *Id.*, quoting *State v. Schiebel*, 55 Ohio St.3d 71, 74, 564 N.E.2d 54 (1990). Therefore, we will not reverse a trial court's decision as being against the manifest weight of the evidence so long as some competent, credible evidence supports it. We presume the trial court's findings are correct because "the trial court is best able to view the witnesses and observe their demeanor, gestures, and voice inflections and to use those observations in weighing the credibility of the testimony." *In re Jordan*, 4th Dist. No. 08CA773, 2008-Ohio-4385, ¶ 9, citing *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984). "When a trial judge, rather than a jury, has acted as the factfinder in a civil case, * * * App.R. 12(C) provides that two of the three appellate judges may reverse the judgment based on the manifest weight of the evidence, but that a judgment may be reversed only once for this reason." *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 7.

**{¶37}** Ordinarily a party seeking a prescriptive easement "must demonstrate clear and convincing evidence of open, notorious, adverse, and continuous use of the easement for a 21-year period." *Dunn* at ¶ 77. Here, Queen did not obtain ownership of the Queen property until 2001 and the Eric Martin property until 2009. Therefore, to meet the 21-year requirement, Queen had to tack time from when others owned these properties onto the years he personally owned them. To establish a prescriptive easement through tacking, Queen had to prove that " '(a) persons in privity, (b) sequentially and continuously used the disputed property, (c) in the same or similar manner, (d) openly, (e) notoriously, (f) adversely to the title holder's interests, and (g) for at least twenty-one years.' " *Stillman v. T.W. Grogan Co.*, 8th Dist. No. 58579, 1991 WL

127265, *1 (June 27, 1991), quoting *J.F. Gioia, Inc. v. Cardinal Am. Corp.*, 23 Ohio App.3d 33, 37, 491 N.E.2d 325 (8th Dist.1985).[10] "[A]n easement appurtenant can only be used with respect to the estate to which it was made appurtenant and cannot later be extended to other property owned by the grantee." *Walbridge v. Carroll*, 172 Ohio App.3d 429, 2007-Ohio-3586, 875 N.E.2d 144, ¶ 17 (6th Dist.). Therefore, Queen must prove all of these elements for each piece of property he claims has a prescriptive easement over the private road. " 'If the claimant makes a prima facie case [for a prescriptive easement], then the burden shifts to the owner of the servient property to show that the use was permissive.' " *Dunn* at ¶ 77, quoting *EAC Properties, L.L.C. v. Hall*, 10th Dist. No. 08AP-251, 2008-Ohio-6224, ¶ 7.

**{¶38}** Here, the trial court found that Queen failed to make a prima facie case for his prescriptive easements because he failed to show continuous use of the road for a 21-year period. Queen had to prove, "use that is 'neither interrupted by acts of the owner nor abandoned by the adverse user' " throughout the 21-year period. *Id.* at ¶ 99, quoting *Crawford*, *supra*, at *3. "The acts of the prescriptive claimant 'do not need to be daily or constant; rather, occasional use that will "fairly indicate an uninterrupted use" to the true owner will suffice.' " *Id.*, quoting Curry & Durham, *Ohio Real Property Law and Practice*, Section 7.02[5], 7-13 (6th Ed.2006). "Abandonment of the use of the easement may destroy the necessary continuity, but temporary and reasonable breaks in the possession do not have that effect." *Id.*, citing Curry at Section 7.02[5], 7-14. However, the use must be "continuous" enough to fairly indicate uninterrupted use. *Id.*

---

[10] The trial court only used the general test for prescriptive easements in its judgment entry, i.e., it makes no mention of elements related to tacking. It is not apparent that the trial court considered tacking at all in its assessment of continuous use, but none of the parties raise the issue.

A.  The Queen Property

{¶39}  Queen argues that he established 21 years of continuous use of the private road from the Queen property by his parents (his predecessor in title) and himself.  He acknowledges the fact that the Hannas testified they saw no trailers on the property before 1999 but points out that other witnesses testified Walter's trailer was there in the 1980s.  Then Queen argues that this matter does not boil down to a credibility determination because the Hannas did not dispute the 1985 "developer's date" on his photograph of Walter's trailer, so their testimony is "entitled to no weight against the obvious physical date on the photograph."  (Appellant's Br. 20).  Queen implies that the trial court had to find his photographic evidence credible and argues that the court "simply miscalculated the 21-year time period necessary for a prescriptive easement."  (Appellant's Br. 20).

{¶40}  Initially, we observe that the trial court did not make findings of fact and conclusions of law, nor did Queen request them.  "When a party fails to request findings of fact and conclusions of law, we must presume the regularity of the trial court proceedings."  *Carter v. Carter*, 2nd Dist. No. 2008 CA 54, 2009-Ohio-3637, ¶ 10.  "In the absence of findings of fact and conclusions of law, we must presume the trial court applied the law correctly and must affirm if there is some evidence in the record to support its judgment."  *Id.*

{¶41}  Contrary to Queen's argument, the photograph dated 1985 (Exhibit 15) does not depict a trailer – it depicts a post Queen claimed was part of the deck that once came off Walter's trailer.  The photograph of the trailer itself (Exhibit 16) has no date.  But even if we presume the trial court believed the photographs depicted the

Queen property near the private road (which the court may have based on its pre-trial viewing of the area) and believed Walter's trailer existed and was accessed by the private road, the trial court did not have to grant Queen a prescriptive easement.

{¶42} Queen testified that his brother put his trailer on the Queen property in 1980 or 1981 and lived there "five-six years, maybe." This testimony places Walter's departure, at the latest, in 1987. Queen testified that the next trailer was placed on the land in 1992, 1993, or 1996. Even if the court used the earliest date, 1992, there would be a five-year gap in use of the road for trailer access. The trial court could reasonably conclude that such a gap constituted an abandonment of use and not just a "temporary and reasonable" break in use. And 21 years have not elapsed since the prescriptive easement clock started to run again, at the earliest, in 1992. Therefore, we conclude the court's ruling was not against the manifest weight of the evidence and overrule the second assignment of error as to the Queen property.

## B. The Eric Martin Property

{¶43} Queen argues that the undisputed evidence shows 21 years of continuous use of the private road from the Eric Martin property by himself and his predecessors in title. At trial, the Hannas, still operating under the erroneous belief that they owned the road, did not dispute Queen's claim that the Eric Martin property had a prescriptive easement over the road. As Queen points out, the Eric Martin property is landlocked – one cannot access a public road from it without travelling over the private road or the Queen property. Joyce Hanna testified that when she moved to the Hanna property in 1967, there was a single wide trailer on the Eric Martin property. She agreed that from 1967 until the 2011 trial, the Eric Martin property had been accessed by the private

road.  Based on this undisputed evidence, we agree that the trial court's finding that Queen failed to prove continuous 21-year use of the road to access the Eric Martin property was against the manifest weight of the evidence.  Accordingly, we sustain the second assignment of error as to this issue.

## V.  Conclusion

**{¶44}**  We sustain the first assignment of error.  We sustain the second assignment of error as to the Eric Martin property and overrule it as to the Queen property.  Accordingly, we affirm the trial court's judgment in part, reverse it in part, and remand for further proceedings consistent with this opinion.

JUDGMENT AFFIRMED IN PART,
REVERSED IN PART,
AND CAUSE REMANDED.

# APPENDIX



## <u>JUDGMENT ENTRY</u>

It is ordered that the JUDGMENT IS AFFIRMED IN PART AND REVERSED IN PART and that the CAUSE IS REMANDED.  Appellant and Appellees shall split the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Scioto County Common Pleas Court to carry this judgment into execution.

Any stay previously granted by this Court is hereby terminated as of the date of this entry.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.  Exceptions.

Abele, P.J. & Kline, J.:  Concur in Judgment and Opinion.


For the Court


_____
William H. Harsha, Judge


### NOTICE TO COUNSEL

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**