[Cite as *Yowonske v. MDB Constr. Co.*, 2010-Ohio-4185.]

STATE OF OHIO, BELMONT COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| THEODORE YOWONSKE, et al. | ) | CASE NO. 09 BE 10 |
| | ) | |
| PLAINTIFFS-APPELLEES | ) | |
| | ) | |
| VS. | ) | OPINION |
| | ) | |
| MDB CONSTRUCTION COMPANY, INC., et al. | ) | |
| | ) | |
| | ) | |
| DEFENDANTS-APPELLANTS | ) | |

CHARACTER OF PROCEEDINGS: Civil Appeal from the Court of Common Pleas of Belmont County, Ohio Case No. 06 CV 45

JUDGMENT: Affirmed.

APPEARANCES:

For Plaintiffs-Appellees: Atty. Richard A. Myser
Fregiato, Myser & Davies
320 Howard Street
Bridgeport, Ohio 43912

For Defendants-Appellants: Atty. John A. Vavra
132 West Main Street
P.O. Box 430
St. Clairsville, Ohio 44950

JUDGES:

Hon. Cheryl L. Waite
Hon. Gene Donofrio
Hon. Mary DeGenaro

Dated: September 2, 2010

WAITE, J.

{¶1} Appellants MDB Construction Co., LLC ("MDB Construction"), and Craig M. Spierings appeal the decision of the Belmont County Court of Common Pleas awarding judgment to Appellees Theodore Yowonske and Dale Malinzak, in a dispute over an easement. The parties own neighboring properties in Belmont and Monroe Counties. The two properties had previously been part of a much larger parcel owned by Powhatan Mining Company, and the parties in this case acquired their various interests at different times starting in 1993. Appellees acquired their property first, and their deed contains language describing an easement to access public roads. Aerial photos showed that the easement across Appellants' property existed in 1989 while the Monroe and Belmont County properties were still under unified ownership. Appellants acquired their property in Belmont County in 2003, and they initially allowed Appellees to continue to use the easement. Then, in 2004, they blocked Appellees from using it and bulldozed over part of the easement. Appellees filed suit for declaratory judgment in order to determine whether they possessed an express or implied easement over Appellants' property. The case went to trial, and the court determined that all the elements of an implied easement were proven. The court granted declaratory judgment and an injunction in favor of Appellees.

{¶2} Appellants are challenging the manifest weight of the evidence on appeal. To establish an implied easement, Appellees were required to prove at trial that the easement was continuous, apparent, permanent and necessary. See *Ciski v. Wentworth* (1930), 122 Ohio St. 487, 172 N.E. 276, syllabus. Appellees showed

that the easement existed prior to the division of the property, it had been continuously used by themselves and their predecessors in interest, the easement had been clearly evident on the property since at least 1989, and that there was no other means for them to access a public road except through Appellants' property. The record supports the existence of an implied easement through prior use, and the judgment of the trial court is affirmed.

<u>Case History</u>

{¶3} In 1906, Joseph Pew purchased real property abutting State Route 7 along the border of Belmont and Monroe Counties in Ohio. In 1943, the Pew Family conveyed over 6,000 acres of their property in Belmont and Monroe Counties to the Powhatan Mining Company. (Plaintiffs' Exh. 6, Deed, Volume 343, Page 338, Belmont County Records of Deeds.) The Powhatan Mining Company merged into the North American Mining Company in 1959. (Plaintiffs' Exh. 7.) The North American Mining Company changed its name to the Bellaire Corporation in 1988. (Plaintiffs' Exh. 8.)

{¶4} In 1991, the Bellaire Corporation conveyed approximately 130 acres of land in Monroe County to Gary and Penny Midcap. (Plaintiffs' Exh. 2, Deed, Volume 205, Page 467, Monroe County Recorder's Office.) This land was located in Switzerland Township, Monroe County, near the Ohio River and State Route 7. The northern border of this property was the Belmont-Monroe County line. The deed contained a clause conveying, "a right of way and easement for ingress and egress in

and over existing ways and lanes across Grantor's lands * * *." (Plaintiffs' Exh. 2, p. 2.)

{¶5} The Midcaps conveyed their Monroe County property to Appellees Dale Malinzak and Theodore Yowonske on March 6, 1993. (Plaintiffs' Exh. 1, Deed, Volume 210, Page 36, Monroe County Recorder's Office.) The deed contained the same easement language contained in the Midcaps' 1991 deed conveying, "a right of way and easement for ingress and egress in and over existing ways and lanes across Grantor's lands * * *." (Plaintiffs' Exh. 1, p. 2.) Appellee Yowonske later conveyed his entire interest in the property to Appellee Malinzak.

{¶6} On July 23, 2003, the Bellaire Corporation conveyed 24.513 acres in York Township, Belmont County to Appellant MDB Construction. (Plaintiffs' Exh. 4, Deed, Volume 790, Page 577, Belmont County Records of Deeds.) This property abuts Appellees' property in Monroe County to the south and Township Road 516 to the north (also known as German Hill Road). The deed to this property stated that it was "subject to * * * all mining rights, leases, covenants, conditions, exceptions, reservations, restrictions, easements, the rights-of-ways of Township Road 516 and all other legal highways, and all limitations and other matters now of record or that would be revealed by an inspection of the above described premises * * *." (Plaintiffs' Exh. 4, p. 4.)

{¶7} On March 3, 2005, MDB Construction conveyed 5.144 acres of the aforementioned 24.513 acres to Appellant Craig M. Spierings. (Plaintiffs' Exh. 5, Deed, Volume 806, Page 362, Belmont County Records of Deeds.)

**{¶8}** On January 31, 2006, Appellees filed a declaratory action complaint in the Belmont County Court of Common Pleas against Appellants MDB Construction and Mr. Spierings. Appellees alleged that they had either an express or an implied easement across Appellants' property. The case proceeded to a bench trial on February 17, 2009.

**{¶9}** Appellee Yowonske testified regarding the existence and use of the easement. The easement, which consisted of a dirt and gravel driveway, extended from Township Road 516 on the northern border of Appellant MDB Construction's property, and extended south across both of Appellants' properties. It continued into Monroe County and across Mr. Yowonske's property. Yowonske testified that he used his property primarily for hunting as an investment, and that his sole access to the property was by way of the easement across Appellants' property. He testified that there was no access from State Route 7, which abutted part of his property, because of the steepness of the hilly terrain. A 60 to 80 foot cliff ran against his border with State Route 7.

**{¶10}** Mr. Yowonske used the easement road from 1993 to 2003 in cooperation with the prior owners. Access to the easement was gained through a locked gate, and Mr. Yowonske, along with others, had their own locks that they would use to enter and exit the easement. In 2003, MDB Construction acquired the Belmont County property that is the subject easement now in dispute. Although Mr. Marvin Brown, the owner of MDB Construction, initially acknowledged Mr. Yowonske's right to use the easement, in 2004 he cut Mr. Yowonske's lock from the

gate and refused any further permission to use the easement, leading to the present litigation. Mr. Brown also bulldozed part of the easement roadway near Mr. Yowonske's property to further prevent him from using it.

{¶11} Licensed surveyor Michael Austen testified for the plaintiffs. He testified he created a survey plat map in 2005 for Mr. Brown that identified a dirt road extending from Township Road 516, winding south through the property owned by MDB Construction, then going through Mr. Spierings property and extending to Monroe County and Appellees' property. He also testified that an aerial photo from 1989 (Plaintiffs' Exh. 13) clearly showed the same dirt roadway reflected on the 2005 plat map. He testified that the dirt roadway was the only practical vehicular access from Appellees' property to a public road. He also testified that a person might be able to climb up the steep hill from State Route 7 to Appellees' property on foot, but that a vehicle could not traverse the hill.

{¶12} Mr. Brown testified that he purchased his property in Belmont County in 2003, intending to build a hunting cabin. He has since built his residence on the property. His driveway and access to the property is the same dirt and gravel roadway that Appellees are claiming as an easement. Mr. Brown testified that many others use his driveway, including Verizon and Alltel to access a cellular tower; American Electric Power; Gary and Laura Lehman (to access their property to the west of Mr. Brown's property); Powhatan Point Cable Company; and North American Coal Company. (2/17/09 Tr., pp. 100, 104-106, 135.) He accesses the property through a locked gate, similar to the manner in which everyone else who uses the

driveway has access. He originally permitted Mr. Yowonske to use the gate and the dirt road, but in 2004, he wanted to limit those who were using his driveway since he was building his home on the property.

**{¶13}** The parties submitted into evidence the various deeds compiling the chain of title relevant to this case, along with the 1989 aerial photograph and the 2005 plat map.

**{¶14}** The trial court issued its judgment on March 10, 2009. The trial court declared that there was an easement by implication across Appellants' property, and that there were no alternate routes of ingress and egress to a public road except through the easement. The court noted that Appellees' property was not "technically landlocked," but that Appellees did not have vehicular access to large portions of their property. The court found that such access was intended by the prior owners and was permanent in nature. The court found that the easement was reasonably necessary to the beneficial enjoyment of the land granted to Appellees. The court also found the servitude to be continuous rather than temporary or occasional. The court cited *Ciski v. Wentworth* in its judgment, and found that all the required elements of *Ciski* had been met. The court granted declaratory judgment and a permanent injunction, but failed to award any monetary damages. This appeal followed on April 9, 2009.

<u>ASSIGNMENT OF ERROR</u>

**{¶15}** "THE DECISION OF THE TRIAL COURT FINDING THAT THE APPELLEES HAVE A PERMANENT EASEMENT BY IMPLICATION OVER AND

ACROSS THE PROPERTY OF THE APPELLANTS IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

{¶16} Appellate review of the manifest weight of the evidence in a civil case is much more deferential to the trial court's judgment than in a criminal case. *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶26. In *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 376 N.E.2d 578, at the syllabus, the Ohio Supreme Court set forth the standard of review for civil manifest weight of the evidence cases, stating, "[j]udgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." An appellate court must presume that the findings of the trial judge in a bench trial are correct since the trial judge had an opportunity "to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *Seasons Coal Co., Inc. v. Cleveland* (1984), 10 Ohio St.3d 77, 80, 461 N.E.2d 1273.

{¶17} Appellants are challenging the manifest weight of the evidence establishing an implied easement across their property. An easement, in its most fundamental form, is the grant of a use on the land of another. *Alban v. R.K. Co.* (1968), 15 Ohio St.2d 229, 231, 44 O.O.2d 198, 239 N.E.2d 22. Implied easements are based upon the principle that when an individual conveys property, he also conveys whatever is necessary for the use and enjoyment of that property. *Deyling v. Flowers* (1983), 10 Ohio App.3d 19, 460 N.E.2d 280, syllabus, citing *Trattar v.*

*Rausch* (1950), 154 Ohio St. 286, 43 O.O. 186, 95 N.E.2d 685, syllabus. Implied easements are disfavored in the law as being contrary to the rule that written documents speak for themselves. *Campbell v. Great Miami Aerie No. 2309, Fraternal Order of Eagles* (1984), 15 Ohio St.3d 79, 80, 15 OBR 182, 472 N.E.2d 711.

{¶18} "It is a well settled rule that a use must be continuous, apparent, permanent and necessary to be the basis of an implied easement upon the severance of the ownership of an estate." *Trattar*, supra, 154 Ohio St. at 292, 43 O.O. 186, 95 N.E.2d 685.

{¶19} To establish an easement by implication, the plaintiff must present clear and convincing evidence on each of the following elements: (1) that there is a severance of the unity of ownership in an estate; (2) that before the separation takes place, the use that gives rise to the easement must have been so long continued and obvious or manifest as to show that it was meant to be permanent; (3) that the easement is reasonably necessary to the beneficial enjoyment of the land granted or retained; and (4) that the servitude is continuous as distinguished from a temporary or occasional use only. *Ciski*, supra, 122 Ohio St. 487, 172 N.E. 276, at syllabus; see also *Cadwallader v. Scovanner*, 178 Ohio App.3d 26, 2008-Ohio-4166, 896 N.E.2d 748, at ¶15; *Campbell*, supra, 15 Ohio St.3d at 80-81, 15 OBR 182, 472 N.E.2d 711.

{¶20} An implied easement may by implied either by prior use or by necessity. *Cadwallader* at ¶14. If the plaintiff is attempting to establish an implied easement by

prior use, he must show that the easement was reasonably necessary, as stated in the third element above. *Cadwallader*, supra, at ¶37. If the plaintiff is attempting to establish an implied easement by necessity, the plaintiff must show that the easement is strictly necessary rather than reasonably necessary. *Tiller v. Hinton* (1985), 19 Ohio St.3d 66, 69, 19 OBR 63, 482 N.E.2d 946; *Wheeler v. McBride*, 178 Ohio App.3d 367, 2008-Ohio-5109, 897 N.E.2d 1197, ¶24-25.

{¶21} Appellees argue on appeal that the trial court found both an express and an implied easement, and that Appellants cannot prevail in this appeal unless they undermine both aspects of the trial court's judgment. Appellee's argument is not correct. The trial court did not find an express easement existed, here. Furthermore, if the trial court had declared both an express and an implied easement, this would have amounted to an error, since they are mutually exclusive. "[B]ecause easements of necessity are implied by law to provide a right of way over land which could have been effectuated by an express grant but was not, one may not simultaneously have an easement over another's land both by express grant and an easement implied of necessity." (Emphasis omitted.) *Tiller*, supra, 19 Ohio St.3d at 69, 19 OBR 63, 482 N.E.2d 946. Thus, the only issue on appeal is whether the record supports the existence of an implied easement.

{¶22} The first of the four *Ciski* elements for establishing an implied easement is that there was a severance of a prior unified estate. The record clearly reflects the prior unity of title and reveals the subsequent severance of that title leading to the present dispute. Joseph Pew owned the unified property in 1906. The property

abutted State Route 7 in Monroe and Belmont Counties. The Pew Family conveyed the property to the Powhatan Mining Company in 1943. The Powhatan Mining Company merged into the North American Mining Company in 1959. The North American Mining Company changed its name to the Bellaire Corporation in 1988. Ultimately, the Bellaire Corporation was the unified owner of the Belmont and Monroe County properties prior to the split of property leading to the dispute in this appeal.

{¶23} The first split of the property that is relevant to this case occurred in 1991, when the Bellaire Corporation conveyed 130 acres of Monroe County property to the plaintiffs' predecessors in interest, Gary and Penny Midcap. The Midcaps conveyed their Monroe County property to Appellees in 1993. While this case was pending, Appellee Yowonske conveyed his entire interest in the property to Appellee Malinzak.

{¶24} The second relevant split of the property occurred in 2003, when the Bellaire Corporation conveyed 24.513 acres of Belmont County property to Appellant MDB Construction. MDB Construction later conveyed 5.144 acres of that property to Appellant Spierings in 2005, and the Spierings' property also abuts Appellees' property on the Monroe County line. The easement in dispute runs partially through the Spierings' property.

{¶25} The record fully establishes the original unity of the properties in dispute, the split of the property, and the history of ownership up to and including the present owners. Therefore, the first of the four *Ciski* elements is satisfied.

{¶26} The second element is that, before the separation of the land takes place, the use that gives rise to the easement must have been continued and obvious or manifest as to show that it was meant to be permanent. Appellee Yowonske testified that the access road across Appellants' property that connected to Township Road 516 existed and was in use when he purchased the property, and was used by his predecessor in interest, Gary and Penny Midcap. (2/17/09 Tr., pp. 19-20.) He testified that the Midcaps and others used it to haul timber, among other things. Marvin Brown, the owner of MDB Construction, testified that he was aware that the Midcaps used the easement to access their property. (2/17/09 Tr., p. 145.) The easement is specifically mentioned in the Midcaps' deed, and it was this deed that effected the splitting of the original unified property. The Midcaps' deed contains the following easement language:

{¶27} "Together with a right of way and easement for ingress and egress in and over existing ways and lanes across Grantor's lands described in the deed recorded in Volume 343, at Page 338 in the Belmont County, Ohio, Record of Deeds, extending from the above described premises to public roads or highways." (Plaintiffs' Exh. 2, p. 2.)

{¶28} The reference to Volume 343, Page 338 of the Belmont County Deed Records refers to the deed granting both the Belmont and Monroe County properties from the Pew family to Powhatan Mining Company.

{¶29} Furthermore, Appellees introduced into evidence a 1989 aerial photography map that shows the easement. (Plaintiffs' Exh. 13.) Surveyor Michael

Austen testified that the aerial photograph displays the easement as a dirt road, and that this photograph predated the split of property in 1991 in which Appellees' predecessors in interest acquired approximately 130 acres from Bellaire Corporation. (2/17/09 Tr., pp. 69-70.)  Surveyor Austen also testified regarding a plat map he made for Appellants in 2005 that showed the exact contours of the easement that appear in the 1989 aerial photograph.  (Plaintiffs' Exh. 11.)  The juxtaposition of Plaintiffs' exhibits 11 and 13 illustrate quite plainly that the easement existed almost unchanged from 1989 to 2005.

{¶30} Based on this evidence, the record supports the existence of the easement road prior to and immediately after the split of the property.

{¶31} The third element establishing the implied easement is that the use of the easement is reasonably necessary (in the case of an implied easement by prior use), or strictly necessary (for an implied easement of necessity).  The trial court found that the easement was "reasonably necessary," indicating that this was a matter of an implied easement by prior use.

{¶32} Appellee Yowonske testified that the majority of his property consists of steep hills.  (2/17/09 Tr., p. 18.)  He testified that he uses the property primarily for hunting and for investment purposes.  (2/17/09 Tr., p. 23.)  He would use the property between five and twenty times per year for hunting.  He testified that the northern part of the property is the best part for hunting.  (2/17/09 Tr., p. 31.)  He testified that, due to the steepness of the terrain, he cannot access the northern part of his property except by way of the easement road that goes through Appellants' property and

connects to Township Road 516. (2/17/09 Tr., pp. 30-31.) He testified that the only road he ever used to access his property was the easement road from Township Road 516 through Appellants' property. (2/17/09 Tr., p. 23.)

**{¶33}** Surveyor Austen testified that the only public road bordering Appellees' property was State Route 7, but that there was no feasible vehicular access to and from State Route 7 due to the steepness of the terrain. (2/17/09 Tr., p. 63.) Mr. Austen testified that vehicular traffic could only access Appellees' property by way of the easement that connects to Township Road 516. (2/17/09 Tr., p. 71.) This evidence supports the trial court's conclusion that the easement was reasonably necessary for Appellees to have beneficial use of their property.

**{¶34}** The fourth element in order to establish an implied easement is that the easement was in continuous use. The record fully supports that the Midcap family (Appellees' predecessors in interest), regularly used the easement to access the property. Appellee Yowonske testified that he regularly used the easement to access the property for hunting. Aerial photographs show the road in existence from at least 1989. Mr. Marvin Brown testified that he was completely aware that the Midcaps used the easement for logging, and he personally invited Mr. Yowonske to continue to use the easement the first time they met each other. (2/17/09 Tr., p. 106.) The easement was stopped from being in continuous use only when Mr. Brown prevented Mr. Yowonske from using it in 2004. Thus, the record supports that the fourth and final *Ciski* element has been proven.

{¶35}  The evidence in this case fully supports the trial court's conclusion that there was an easement implied by prior use on Appellants' property, and Appellants' sole assignment of error is overruled.  The judgment of the trial court is affirmed.

Donofrio, J., concurs.

DeGenaro, J., concurs.