[Cite as *Fairport Real Estate L.L.C. v. Nautical Ridge Condominium Owners' Assn., Inc.*, 2018-Ohio-791.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# LAKE COUNTY, OHIO

| | | |
|---|---|---|
| FAIRPORT REAL ESTATE LLC, | : | **O P I N I O N** |
| Plaintiff-Appellant, | : | |
| - vs - | : | **CASE NO. 2017-L-048** |
| NAUTICAL RIDGE CONDOMINIUM OWNERS' ASSOCIATION, INC., et al., | : | |
| Defendant-Appellee. | : | |

Civil Appeal from the Lake County Court of Common Pleas, Case No. 2015 CV 002224.

Judgment: Affirmed in part and reversed in part; remanded.

*David M. Dvorin*, 30195 Chagrin Boulevard, Suite 300, Pepper Pike, OH 44124 (For Plaintiff-Appellant).

*Steven M. Ott*, *Amanda Barreto*, & *Lindsey Wrubel*, Ott & Associates Co., LPA, 1300 East Ninth Street, Suite 1520, Cleveland, OH 44114; *Joseph Ferrante* & *Lavell Payne*, Nationwide Insurance Company, 2 Summit Park Drive, Suite 540, Independence, OH 44131 (For Defendant-Appellee).

TIMOTHY P. CANNON, J.

{¶1}    Appellant, Fairport Real Estate LLC ("Fairport"), appeals from the March 13, 2017 judgment of the Lake County Court of Common Pleas. The dispute before the trial court was whether Fairport has easement rights over property owned by appellee, Nautical Ridge Condominium Owners' Association, Inc. ("the Association") for ingress and egress and for the use of a retention basin and sanitary sewer line and whether the Association has easement rights over Fairport's property for utility lines. The trial court

denied Fairport's motion for summary judgment and granted, in part, the Association's motion for summary judgment. For the reasons that follow, the trial court's judgment is affirmed in part and reversed in part.

{¶2} In April 2006, non-party Nautical Ridge Development, LLC ("NRD" or "Declarant") recorded a Declaration of Condominium Ownership ("Declaration") for an expandable condominium development ("Development") in Fairport Harbor, Ohio. The Declaration provided for the establishment of the Association (appellee herein). NRD owned both the Phase I Parcel ("the Property") and the contiguous property defined in the Declaration as the "Additional Lands." The Declaration gave NRD the ability (but not the obligation) to submit all or a portion of the Additional Lands to the Development. The Additional Lands are landlocked by the Development's condominium units. NRD, as the Declarant, therefore reserved easement rights over the Property for ingress, egress, utilities, and construction "for the benefit of and use by Declarant, and its * * * successors and assigns[.]"

{¶3} After completing several phases, NRD abandoned the Development and conveyed the remaining Additional Lands to Fifth Third Bank, N.A. ("Fifth Third") by General Warranty Deed in November 2009. The General Warranty Deed designated Fifth Third as NRD's "Successor Declarant" under the Declaration with regard to the Additional Lands and declared Fifth Third to "stand in the same relation" to the Additional Lands as NRD.

{¶4} On October 14, 2015, Fairport (appellant herein) received conditional approval from the Planning Commission for the Village of Fairport Harbor to build apartments on the Additional Lands. To obtain approval, Fairport was required to either obtain permission from the Association or a court order to use the sanitary sewer line that

2

services the Development, to use the Association's retention basin, and to use the roadway through the Development.

{¶5} On November 25, 2015, Fifth Third transferred the Additional Lands to Fairport through a Quitclaim Deed. On June 10, 2016, Fifth Third recorded an Assignment designating Fairport as its Successor Declarant under the Declaration and declaring Fairport to "stand in the same relation" to the Additional Lands as Fifth Third.

{¶6} The Association refused to permit Fairport to use its retention basin, roadways, or sanitary sewer lines. Thus, Fairport filed suit and, in its amended complaint, requested a declaratory judgment that it has easement rights, either express or implied by necessity, to use the sanitary sewer line, retention basin, and roadways (or, in the alternative, an order that the Association remove any utility lines from the Additional Lands). Fairport also requested preliminary and permanent injunctions allowing it to connect with and use the sanitary sewer line and storm piping, to use the retention basin, and to use the private roads for ingress and egress. Fairport raised additional claims for breach of contract, interference with the purported easements, nuisance, and trespass over the Additional Lands by the Association's utility lines. The amended complaint also named Lake County Sanitary Engineer as a defendant.

{¶7} The Association filed a counterclaim, requesting the following declaratory judgments: that the development period in the Declaration has ended; that Fairport is not a Successor Declarant and has no easement rights to use the sanitary sewer line, retention basin, and roadways; that Fairport cannot tie into the sanitary sewer line per the Lake County Utilities Department Rules; that the Association has easement rights, implied by prior use, to use the utility lines that run under the Additional Lands; and that if Fairport does have any easement rights, it must share expenses with the Association. The

Association also sought preliminary and permanent injunctions to prevent Fairport from interfering with the utility lines that run under the Additional Lands.

{¶8} Fairport and Lake County Sanitary Engineer entered into an agreement, reflected in an agreed judgment entry issued by the trial court on October 24, 2016, wherein Fairport was permitted to tie into or otherwise connect to the existing sanitary sewer line on the Additional Lands owned by Fairport.

{¶9} Fairport moved for summary judgment on the basis that it has express easement rights either as owner of the Additional Lands or as a Successor Declarant under the Declaration or, in the alternative, that it has implied easements based on prior use because the original plan for developing the Property included use of the roads and retention basin by the Additional Lands. It did not move for summary judgment on the basis that it has implied easements by necessity, as was pled in its amended complaint.

{¶10} The Association moved for summary judgment on the basis that Fairport has no express easement rights because it is not a Successor Declarant and that the Association has an implied easement over the Additional Lands for the utilities. The Association also argued that Fairport should not be permitted to tie into the sanitary sewer lines, despite the agreed judgment entry with Lake County Sanitary Engineer, because doing so violates the Lake County Utilities Department Rules.

{¶11} The trial court denied Fairport's motion and rendered judgment in favor of the Association on Fairport's amended complaint. The trial court granted the Association's motion in part and denied it in part. The trial court held Fairport is not a Successor Declarant under the Declaration and has no easement rights for use of the sanitary sewer lines, retention basin, and roadways, and that the development period in the Declaration has ended. The trial court further held the Association has an implied

4

easement to use the utilities that run under the Additional Lands and that Fairport is permanently enjoined from interfering with them.

{¶12} Fairport noticed an appeal from this entry and raises three assignments of error for our review:

> [1.] The trial court committed prejudicial error in denying [Fairport's] motion for summary judgment and granting in part [the Association's] motion for summary judgment based upon the trial court's mistaken opinion that [Fairport] LLC did not have express easement rights under the Declaration either as the owner of the Additional Lands or as a successor Declarant.
>
> [2.] The trial court committed prejudicial error in denying [Fairport's] motion for summary judgment and granting in part [the Association's] motion for summary judgment because of the trial court's mistaken opinion that [Fairport] did not have an implied easement to use the road, retention basin and utilities located on [the Association's] property.
>
> [3.] The trial court committed prejudicial error in denying [Fairport's] motion for summary judgment and granting in part [the Association's] motion for summary judgment based upon the trial court's mistaken opinion that [the Association] has an implied easement to use the utilities [sic] lines located on [Fairport's] property.

{¶13} Pursuant to Civ.R. 56(C), summary judgment is proper when (1) the evidence shows "that there is no genuine issue as to any material fact" to be litigated, (2) "the moving party is entitled to judgment as a matter of law," and (3) "it appears from the evidence * * * that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence * * * construed most strongly in the party's favor."

{¶14} A trial court's decision to grant summary judgment is reviewed by an appellate court under a de novo standard of review. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105 (1996). "Under this standard, the reviewing court conducts an independent review of the evidence before the trial court and renders a decision de novo,

5

i.e., as a matter of law and without deference to the conclusions of the lower court." *Jackson v. Moissis*, 11th Dist. Geauga No. 2012-G-3070, 2012-Ohio-5599, ¶20 (citation omitted).

{¶15} Under its first assignment of error, Fairport argues the trial court erred by failing to conclude that Fairport has express easement rights under the Declaration as the Successor Declarant and also as the owner of the Additional Lands.

{¶16} Contract principles apply to a court's interpretation of a condominium development declaration. *See Williams Creek Homeowners Assn. v. Zweifel*, 10th Dist. Franklin No. 07AP-689, 2008-Ohio-2434, ¶41, citing *Nottingdale Homeowners' Assn., Inc. v. Darby*, 33 Ohio St.3d 32 (1987). "In construing the terms of any contract, the principal objective is to determine the intention of the parties." *Hamilton Ins. Serv., Inc. v. Nationwide Ins. Cos.*, 86 Ohio St.3d 270, 273 (1999) (citation omitted). "We presume the intent of the parties to a contract resides in the language used in the written instrument." *Oryann, Ltd. v. SL & MB, LLC*, 11th Dist. Lake No. 2014-L-119, 2015-Ohio-5461, ¶25, citing *Kelly v. Med. Life Ins. Co.*, 31 Ohio St.3d 130 (1987), paragraph one of the syllabus. "[A] court may not interpret the contract in a manner inconsistent with the clear language of the instrument." *Id.* at ¶26, citing *Shifren v. Forrest City Ents., Inc.*, 64 Ohio St.3d 635, 638 (1992).

{¶17} "If a contract is clear and unambiguous, then its interpretation is a matter of law and there is no issue of fact to be determined. However, if a term cannot be determined from the four corners of a contract, factual determination of intent or reasonableness may be necessary to supply the missing term." *Inland Refuse Transfer Co. v. Browning-Ferris Indus. of Ohio, Inc.*, 15 Ohio St.3d 321, 322 (1984), citing

6

*Alexander v. Buckeye Pipe Line Co.*, 53 Ohio St.2d 241 (1978) and *Hallet & Davis Piano Co. v. Starr Piano Co.*, 85 Ohio St. 196 (1911).

**Successor Declarant**

{¶18} We initially analyze whether Fairport is a Successor Declarant under the Declaration. The Declaration provides that NRD is "hereinafter referred to as 'Declarant'" and that "the provisions of this Declaration shall constitute covenants to run with the land and shall be binding on Declarant and each successor of Declarant who stands in the same relation to the Property or Additional Lands as Declarant and its and their respective * * * successors and assigns * * *."

{¶19} Article XI, section (A), of the Declaration states that "Declarant hereby reserves the right and option, *but not the obligation*, to submit the Additional Lands, or any portion or portions thereof * * * to the provisions of this Declaration and the [Ohio Condominium] Act." (Emphasis added). Section (C) of Article XI provides that "Declarant has a period of seven (7) years from the date the Declaration is filed for record to expand the Condominium Property to include the Additional Lands. Other than the expiration of the time limit set forth above, there are no circumstances that will terminate the Declarant's right to expand the Condominium Property to include the Additional Lands." Further, under section (M) of Article XI, "Declarant reserves the right to assign its rights and option to expand the Condominium Property to include the Additional Lands, or any portion thereof, to any successor of the Declarant who stands in the same relationship to the Condominium Development as the Declarant."

{¶20} Neither the Declaration nor the Ohio Condominium Act defines "Declarant" or "successor of Declarant," nor do they explain what is meant by "stands in the same relation to." The Ohio Condominium Act uses these terms, however, in its definition of

7

"Developer": "'Developer' means any person who directly or indirectly sells or offers for sale condominium ownership interests in a condominium development. 'Developer' includes the declarant of a condominium development and any successor to that declarant who stands in the same relation to the condominium development as the declarant." R.C. 5311.01(S).

*Fifth Third as Successor Declarant*

{¶21} After completing several phases, NRD abandoned the Development and conveyed the remaining (landlocked) Additional Lands to Fifth Third by General Warranty Deed in lieu of foreclosure. This conveyance took place in November 2009, which was before expiration of the seven-year time limit on the Declarant's right to expand the Condominium Property. The Deed designated Fifth Third as NRD's "Successor Declarant" under the Declaration with regard to the Additional Lands and declared Fifth Third to "stand in the same relation" to the Additional Lands as NRD. Specifically, the Deed provides as follows:

> Grantor [NRD] does hereby (i) designate Grantee [Fifth Third] as Grantor's successor 'Declarant' under the Declaration of Condominium Ownership for the Nautical Ridge Condominiums, which was filed for record with the Lake County, Ohio Recorder on April 20, 2006 * * *, with regard to the Premises, and solely with regard to the Premises, Grantee being hereby declared by Grantor to stand in the same relation to the Premises (which constitutes a portion of the 'Additional Lands' as that term is defined in the Declaration) as does Grantor, and (ii) assign, transfer, and set over to Grantee, and by acceptance and recording of this Deed Grantee does hereby accept and assume, all of Grantor's rights as 'Declarant' under the Declaration with regard to the Premises, and specifically all of 'Declarant's' rights with regard to the Premises under Article XI of the Declaration; provided, however, that in no event shall the foregoing designation and/or assignment and assumption constitute or in any way be deemed to be Grantee's assumption of any liabilities which Grantor has in connection with the Declaration, the Condominium Property (as defined in the Declaration), or the Common Elements (as defined in the Declaration), including, without limitation, any warranties.

8

{¶22} The Association argues this designation and assignment of Declarant's rights was ineffective because it did not also transfer the obligations under the Declaration to Fifth Third. The limiting language in the Deed, however, states that Fifth Third does not assume *the Grantor's* liabilities (the Grantor being defined in the Deed as NDR (i.e., the developer)); it does not state that Fifth Third declines to assume *the Declarant's* liabilities. In other words, Fifth Third assumed the liabilities under the Declaration as the Successor Declarant, but did not assume liability for any past action or omission of NDR during the time NDR was the Declarant. This does not render the assignment ineffective; in fact, it is legally required under R.C. 5311.05.

{¶23} R.C. 5311.05(C)(15) was added in 2004 and requires the Declaration for an expandable condominium property to contain a statement that "a purchaser who acquires the property at a sheriff's sale *or by deed in lieu of a foreclosure*, is not liable in damages for harm caused by an action or omission of the developer or a breach of an obligation by the developer." (Emphasis added.) As one treatise explains, the purpose of this provision is to protect "a lender who foreclosed upon the additional property with the expectation that it could 'complete' the project, or could sell the property to another builder who would want to complete the project, without incurring responsibility for the acts or omissions (not to mention the warranty obligations) of the original developer." Kuehnle & Williams, *Baldwin's Ohio Condominium Law*, Section 13:3, 151 (2013). The trial court's and the Association's reliance on *McKnight v. Bd. of Directors*, 32 Ohio St.3d 6 (1987) is therefore misplaced, as R.C. 5311.05(C)(15) was not added to the Ohio Condominium Act until 2004, well after the Ohio Supreme Court's 1987 opinion.

9

**{¶24}** The General Warranty Deed effectively assigned the Declarant's rights under the Declaration from NRD to Fifth Third as the Successor Declarant. The trial court's conclusion to the contrary was in error.

*Fairport as Successor Declarant*

**{¶25}** On November 25, 2015, Fifth Third transferred title to the Additional Lands to Fairport through a Quitclaim Deed. This occurred well after expiration of the seven-year time limit on the Declarant's right to expand the Condominium Property. Over six months later, on June 10, 2016, Fifth Third recorded an Assignment designating Fairport as its Successor Declarant under the Declaration and declaring Fairport to "stand in the same relation" to the Additional Lands as Fifth Third. Specifically, the language of assignment provides:

> Effective as of the date of the filing of the Deed transferring title of the Premises from Assignor [Fifth Third] to Assignee [Fairport] with the Lake County Recorder's Office (the 'Effective Date'), Assignor (i) designated its Interest to Assignee as Assignor's successor 'Declarant' under the Declaration, with regard to the Premises, and solely with regard to the Premises, Assignee being declared by Assignor to stand in the same relation to the Premises (which constitutes a portion of the 'Additional Lands' as that term is defined in the Declaration) as did Assignor, and (ii) assigned, transferred, and set over to Assignee, and by the acceptance and recording of the Deed, Assignee accepted and assumed, all of Assignor's rights as 'Declarant' under the Declaration with regard to the Premises, including, without limitation, all of 'Declarant's' rights with regard to the Premises under Article XI of the Declaration. Assignee accepts Assignor's right, title and interests as expressly set forth in this Assignment without warranties or covenants of any kind.

**{¶26}** The Association argues this designation and assignment of Declarant's rights was ineffective because Fairport does not "stand in the same relation" to the Additional Lands as did NRD, the original Declarant. The Association asserts Fairport does not "stand in the same relation" because it has no intention of submitting the

10

Additional Lands to the condominium form of ownership and because the seven-year time limit within which to do so has expired.

{¶27} One of the Declarant's rights under the Declaration is found in Article XI of the Declaration: "Declarant hereby reserves the right and option, but not the obligation, to submit the Additional Lands, or any portion or portions thereof * * * to the provisions of this Declaration and the [Ohio Condominium] Act." It further provides, however, that the "Declarant is not obligated to expand the Condominium Property to include all or any portion of the Additional Lands beyond the initial forty-five (45) Units" and the "Declarant is not obligated to construct improvements on the Additional Lands." Finally, it allows that, "[i]f the Declarant does not submit all or a portion of the Additional Lands to the Condominium Development, the restrictions shall not apply to any portion of the Additional Lands that is not so submitted."

{¶28} If NRD had remained the Declarant without ever assigning the accompanying rights to a successor, it would have had the right, but not the obligation, to include the Additional Lands in the Development up and until April 20, 2013, i.e., seven years after the Declaration was recorded. After April 20, 2013, NRD would no longer have been permitted to include the Additional Lands in the Development. There is no provision in the Declaration or the Ohio Condominium Act, however, that states other declarant rights provided in a declaration are terminated upon the expiration of the development period. Thus, NRD would have remained the Declarant and could have exercised those other rights under the Declaration.

{¶29} Similarly, Fairport no longer has the right and option to include the Additional Lands in the Development because the time limit has expired. Nevertheless, it has been assigned "all of Assignor's rights as 'Declarant' under the Declaration with

11

regard to the Premises." Thus, Fairport "stands in the same relation to" the Additional Lands as did NRD.

{¶30} Fairport was effectively assigned the Declarant's rights from Fifth Third and is a Successor Declarant under the Declaration. The trial court's conclusion to the contrary was in error.

**Express Easement Rights**

{¶31} As Fairport may exercise the rights of a Successor Declarant, we consider what easement rights a Successor Declarant has under the Declaration. Fairport specifically asserts it has easement rights to use the sanitary sewer line, retention basin, and roadways, and has the right of ingress and egress over the roadways.

{¶32} Article III of the Declaration sets forth the following provisions as to easements, in relevant part:

> Declarant hereby creates by grant or reservation, as the case may be, in perpetuity, for its benefit and for the benefit of each Unit Owner, each mortgagee in whose favor a mortgage shall be granted with respect to any Unit, the Association, and to any other person now having or hereafter having an interest in the Phase I Parcel and the Additional Lands or any part thereof, and the respective heirs, devisees, executors, administrators, personal representatives, successors and assigns of the foregoing persons, the following nonexclusive rights and easements as and to the specified parties:
>
> (A) Roadway, Utility and Other Easements. To the Declarant and the Association, the right and easement to construct, install, repair, replace, relocate, operate and maintain roadways, driveways, sidewalks, water mains with service connections, storm and sanitary sewer lines, steam, electric, gas and telephone lines, conduits, and transmission and meter devices and other utilities, in, on, under and/or over the Condominium Property; * * *.
>
> * * *
>
> (G) Reservation by Declarant of Easements for Ingress and Egress, Utilities and Construction. The Declarant herein hereby reserves unto itself [f]or as long as the Declarant owns a Condominium Ownership Interest in the Condominium Property or Additional Lands

12

the easement and right for the benefit of and use by Declarant, and its agents, officers, directors, employees, licensees, servants, tenants, personal representatives, successors and assigns for ingress and egress by foot, automobile and otherwise and for utility and facility purposes, over, through and under the Condominium Property and any part thereof other than a Unit not owned by the Declarant. The Declarant further reserves easements over Condominium Property for the benefit of the Additional Lands to establish the grade of the Additional Lands and for necessary access to construct the Additional Lands Buildings and other improvements upon the Additional Lands.

\* \* \*

(K) <u>Easement Rights</u>.  The above easements are to be enjoyed in common with the grantees, their heirs, executors, administrators, successors and assigns, with the right reserved in the Declarant, its successors and assigns, to grant, assign, or convey or dedicate to public use all or a portion of the easement rights herein to one or more assignees or grantees as an appurtenance to the Condominium Property and Additional Lands, without it being considered by the grantees, their heirs, executors, administrators, successors and assigns, as an additional burden on said easement and/or the Condominium Property.  Any assignment, conveyance or dedication of said easement rights by the Declarant may be made at the same time or at successive times, and the residuary easement rights of the Declarant shall not cease or determine until the Declarant has no remaining interest, of record, in the Condominium Development or Additional Lands.  However, the rights of all assignees or grantees in the reserved easements shall remain in full force and effect.

\* \* \*

(M) <u>Sharing of Expenses</u>.  In the event all or any portion of the Additional Lands is not added to the Condominium Property ('Non-Added Property'), and such Non-Added Property is subsequently developed and improved by the construction thereon of dwelling units, then the fair share of the cost and expense of repairing, replacing, relocating, operating and maintaining roadways, sidewalks, water mains and service connections, storm and sanitary sewer lines, a retention basin, if any, and drainage thereto, steam, electric, gas, telephone and cable television lines, conduits, and transmission and meter devices and other utilities and facilities installed on, in, over or under the Condominium Property and/or the Additional Lands and which are utilized in common by the Condominium Property and the Non-Added Property shall be apportioned among all of the Unit Owners and/or the owner(s) of the

13

Non-Added Property, based on the total number of Units situated within the Condominium Property plus the total number of dwelling units actually constructed on the Non-Added Property (e.g., the total number of condominium units, if the Non-Added Property is submitted to condominium ownership; the total number of residences if the Non-Added Property is improved with single-family residences; the total number of rental units if the Non-Added Property is improved with rental units); such fair share of such expenses attributable to the Non-Added Property shall be determined by a fraction, the numerator of which shall be the number of dwelling units constructed on said property and the denominator of which shall be the total number of dwelling units constructed on the Condominium Property, and the Non-Added Property. The Non-Added Property shall not be chargeable hereunder unless and until the same is improved by the construction thereon of dwelling Units and such dwelling Units utilize the above improvements. If all or a portion of the Additional Lands is not added to the Condominium Property, Declarant reserves the right to execute and record a Declaration of Easements establishing a mechanism for the governance of the rights and obligations set forth in this subsection (M).

## *Sanitary Sewer Lines, Roadways, and Other Utilities*

{¶33} It is clear from this language that the successors and assigns of the original Declarant have the right and easement under section (A) to construct, install, repair, replace, relocate, operate and maintain the roadways, storm and sanitary sewer lines, and other utilities that run in, on, under, or over the Property. As stated in the preamble to Article III, these particular easement rights were granted in perpetuity. Thus, Fairport, as the Successor Declarant, has express easement rights, jointly with the Association, to construct, install, repair, replace, relocate, operate, and maintain the roadways, storm and sanitary sewer lines, and other utilities. The trial court erred in concluding otherwise.

## *Ingress and Egress*

{¶34} The easement rights for ingress and egress under section (G) "by foot, automobile, and otherwise," on the other hand, were reserved to the original Declarant and its successors and assigns only for as long as that party owns a condominium ownership interest in the Property or Additional Lands. The statutory definition of

14

"condominium ownership interest" is "a fee simple estate or a ninety-nine-year leasehold estate, renewable forever, in a unit, together with an appurtenant undivided interest in the common elements." R.C. 5311.01(N). Fairport does not own a condominium ownership interest in the Property or Additional Lands. In fact, no one owns a condominium ownership interest in the Additional Lands. Therefore, the express easement right for ingress and egress has expired.

*Retention Basin*

{¶35} The trial court held: "By its plain language the cost-sharing provision in the Declaration does not grant any easement rights, and the express easements in the Declaration do not include an easement for use of the retention basin." We disagree, however, that this justified granting summary judgment on this issue in favor of the Association.

{¶36} Retention basins are part of a system for managing storm water. Section (A) of Article III does not specifically mention a retention basin, but it does provide an easement for storm sewer lines, conduits, and "other utilities." Additionally, section (M) of Article III specifically mentions a retention basin and anticipates that it would be shared by the two parcels of land. Section (M) provides for the sharing of expenses, as a result of the easements, between the condominium unit owners and the owner(s) of any of the Additional Lands that were not added to the Development. One expense the owners are to apportion is the "fair share of the cost and expense of repairing, replacing, relocating, operating and maintaining * * * storm and sanitary sewer lines, a retention basin, if any, and drainage thereto[.]" It is clear, within the four corners of the Declaration, that the contracting parties intended the Declarant to include an easement right to use the retention basin, if any, on the Property.

15

*Conclusion*

{¶37} Fairport's first assignment of error has merit to the extent indicated. Fairport is a Successor Declarant and has express easement rights under the Declaration, as stated above, to construct, install, repair, replace, relocate, operate, and maintain the roadways, storm and sanitary sewer lines, and other utilities, including the retention basin. Fairport's express easement rights for ingress and egress over the Property have expired.

**Implied Easement Rights**

{¶38} Under its second assignment of error, Fairport argues it has implied easement rights to use the roadways, sanitary sewer lines, and retention basin. This argument is now moot as it pertains to the retention basin and the right to construct, install, repair, replace, relocate, operate, and maintain the roadways, storm and sanitary sewer lines, and utilities. We continue, therefore, to Fairport's argument only as it pertains to an implied easement for ingress and egress.

{¶39} The trial court held:

> Because an implied easement creates a right of way over land which could have been effectuated by an express grant but was not, an express easement and an implied easement cannot exist simultaneously. *Yowanski v. MDB Constr. Co.*, 7th Dist. Belmont No. 09 BE 10, 2010-Ohio-4185, ¶21. As discussed above, the Declarant (NRD) had an express easement under the Declaration to use the roadway for ingress and egress, and therefore no implied easement was created at the time of severance and Plaintiff cannot claim an implied easement now. *Tiller v. Hinton*, 19 Ohio St.3d 66, 70, 482 N.E.2d 946, 951 (1985).

An implied easement and an express easement cannot exist simultaneously simply because when an express easement is granted there is no need to imply one. *Yowanski*, *supra*, at ¶21. This does not necessarily apply here, however, where the express easement has expired.

16

**{¶40}** Two types of implied easements are recognized in the law—those based on prior use and those based on necessity. One of the elements of an implied easement based on prior use is that the use shall have been so long continued and obvious or manifest as to show that it was meant to be permanent. *Ciski v. Wentworth*, 122 Ohio St. 487 (1930), syllabus. We agree that an implied easement based on prior use cannot exist here because the express easement was granted with a temporal limitation—it was clearly not meant to be permanent and we cannot imply otherwise. Thus, it was not error for the trial court to deny summary judgment to Fairport on this basis.

**{¶41}** It was error, however, for the trial court to grant summary judgment in favor of the Association on the basis that Fairport did not have *any* implied easement rights over the Property for ingress and egress. Neither party raised the issue of whether Fairport has an implied easement *by necessity* in their motions for summary judgment, although it was stated as a claim in Fairport's complaint.

**{¶42}** Fairport's second assignment of error has merit to the extent indicated. The trial court did not err in its decision that Fairport does not have implied easement rights for ingress and egress based on prior use. The trial court erred, however, in granting summary judgment in favor of the Association on the issue of implied easement rights for ingress and egress, in general, because the arguments and evidentiary material were solely directed toward the prior use claim. On remand, the issue of whether there is an implied easement by necessity must be determined either in renewed motions for summary judgment or at trial.

**Conclusion**

**{¶43}** Under its third assignment of error, Fairport argues the trial court's determination that the Association has implied easement rights to use the utility lines on

the Additional Lands is inequitable because it denied the same rights to Fairport. Based on our disposition of the first and second assignments of error, we find an argument based on equitability is moot and decline to address it herein.

{¶44} The judgment of the Lake County Court of Common Pleas is affirmed in part and reversed in part, and the matter is remanded for further proceedings. On remand, the trial court must determine the issue of whether Fairport has an implied easement by necessity for ingress and egress over the Property. Additionally, the trial court must compute the sharing of expenses and maintenance of the roadways and utilities, etc., as provided in Article III, section (M) of the Declaration.


CYNTHIA WESTCOTT RICE, J.,

COLLEEN MARY O'TOOLE, J.,

concur.

18